**RICHARD I. DREITZER**
Nevada Bar No. 6626
**JAMES T. TUCKER**
Nevada Bar No. 12507
**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
300 South 4th Street, 11th Floor
Las Vegas, NV 89101
(702) 727-1400; FAX (702) 727-1401
Richard.Dreitzer@wilsonelser.com
James.Tucker@wilsonelser.com
Attorneys for Plaintiff Nikkei Global Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Nikkei Global Inc., a California corporation, | CASE NO.:  2:18-cv-02013-JCM-GWF |
| Plaintiff, | |
| vs. | |
| Co-Partner Consortium ("Partner-CO"), a Nevada general partnership associated in fact and as an enterprise per 18 USCA § 1961(3); Mr. Phillip Ziade,  Nevada resident and co-partner; Mr. Jude E. Nassar, an individual resident of Clark County, Nevada; Appleton Properties, LLC, a Nevada limited liability company; Z Leb Group, LLC, a Nevada limited liability company; Progressive Construction, Inc. a/k/a Growth Construction, a Nevada corporation; Growth Development, LLC a/k/a Growth Construction, a Nevada limited liability company; Vibrant Realty, LLC, a Nevada limited liability company; AJ Properties International, LLC, a/k/a AJ1, a Nevada limited liability company; AJ Properties International Series 2 LLC, a/k/a AJ2 a Nevada limited liability company; Growth Holdings, a Nevada corporation; Growth Luxury Homes, LLC, a/k/a GLH, a Nevada limited liability company; Growth Luxury Realty, LLC, a/k/a GLR, a Nevada limited liability company; Mr. Yoshimi Hirooka a resident of Japan or Singapore, doing business in Nevada;  Mr. Yoshihiro Hirooka, a resident of Japan or Singapore doing business in Nevada; Hirooka Family Office, Ltd., a foreign organization doing business in Nevada, | **FIRST AMENDED COMPLAINT**<br><br>**Jury Demanded**<br><br>Diversity Jurisdiction<br><br>Amount in controversy > $75,000 |
| Defendants. | |

1415333v.1

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), Plaintiff Nikkei Global Inc., ("NGI") by and through its attorneys of record, the law firm of Wilson Elser Moskowitz Edelman & Dicker LLP, for its First Amended Complaint against Defendants, based upon information and belief, hereby alleges as follows:

## I.    <u>OVERVIEW OF NGI AND PARTNER-CO'S "GENERAL PARTNERSHIP"</u>

1.    The lead defendant Co-Partner Consortium ("Partner-CO"), is a common enterprise, a general partnership associated *in fact* controlled by and for the benefit of Defendant Phillipe Ziade ("Ziade"), who disregarded the separate status of member entities, commingled funds, and used member-entities to unlawfully deprive NGI of its rights as alleged herein.

2.    Beginning in 2013, NGI and the Partner-CO Defendants, as defined herein, operated as partners (the "General Partnership," a non-party), in an exclusive business relationship, jointly analyzing and selecting real estate projects in or near Las Vegas, Nevada while producing and sharing profits based on the combined, synergistic, input of each partner, i.e.:

(A)    NGI possessed a valuable and exclusive client-network (part of NGI's wholly-owned trade secrets, as alleged herein); and NGI provided unique services and proprietary processes used to initiate, coordinate, and sustain each project as NGI screened, selected, and managed optimal sub-groups of Japanese clients as short-term joint-venturers with the General Partnership; while,

(B)    The Partner-CO Defendants touted brands/trademarks and made promises to coordinate timely improvements to add value to each property/project, which could then be sold at a profit, or leased & managed.

3.    The General Partnership operated generally as follows: (1) NGI and the Partner-CO Defendants analyzed and selected an underdeveloped parcel of real property in or near Las Vegas, Nevada; then (2) NGI selected and coordinated prospective short-term venture-partners as the

2

Partner-CO Defendants coordinated construction improvements and, sometimes, created or used an entity-member of its common enterprise for the joint-venture; and (3) the joint-venture either sold or leased the property, or both, at a profit for the General Partnership and its joint-venture partners. The General Partnership of NGI and the Partner-CO Defendants continued beyond each joint-venture project.

4.      In on or about 2018, NGI discovered that Defendant Ziade, Defendant Jude Nassar ("Nassar"), and the other Partner-CO Defendants engaged in the activities alleged herein in the Hirooka-CO Defendants (i.e., two defendant brothers and their business entity, as defined herein) for unlawful objectives aimed at injuring NGI.

## II.    JURISDICTION & PARTIES

5.      This Court has subject matter jurisdiction based on a federal question pursuant to 28 U.S.C. § 1331 because it involves a case arising under laws of the United States, to wit, the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b)(1).[1]

6.      This Court has subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332, as the Plaintiff and Defendants have complete diversity of citizenship because no Defendant has the same citizenship as Plaintiff, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7.      The Court has personal jurisdiction over each Defendant based on their respective or joint: (1) presence in Nevada; (2) engagement in transactions to purchase or sell real properties in or near Las Vegas, Nevada including those that are at issue in this case; (3) ownership of real properties in or near Las Vegas, Nevada, including those that are at issue in this case; (4) minimum contacts

---

[1]   Plaintiff NGI also has request relief under the Declaratory Judgments Act pursuant to 28 U.S.C. § 2201.

1415333v.1

with Nevada; (5) purposeful activities directed to Nevada through or against Plaintiff NGI, which has an ongoing presence in Nevada; and/or, (6) conduct giving rise to damages occurring in Nevada.

8.      In addition to the federal claims alleged against Defendants, Plaintiff NGI also has alleged pendent state claims sounding in law and equity over which this Court should exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

9.      Because of Defendants' illegal actions, upon information and belief, NGI has been damaged more than $2 million.

10.     The Court's exercise of personal jurisdiction over each Defendant is reasonable and fair, as alleged in further detail herein.

**A.      _Plaintiff Nikkei Global Inc. ("NGI"):_**

11.     Plaintiff Nikkei Global Inc. ("NGI" a/k/a "Nikkei Global") is a California corporation doing business in or near Las Vegas, Nevada, with a presence in Nevada providing proprietary information-services about properties in Las Vegas to clients who mostly (or exclusively) reside outside the United States.

12.     NGI has been in an "exclusive business relationship" and affiliated with Defendant Ziade and each or all of the Partner-CO Defendants, either directly or indirectly, or through the General Partnership, since 2013.

**B.      _The Partner-CO Defendants:_**

13.     Defendant Partner-CO is a common enterprise and, by its conduct—including co-mingling of funds, disregarding separate entities, and uses for unlawful activities—is a general partnership (or joint venture) with a continuous and systematic presence in Nevada comprising the Defendant individuals or entities identified next.

4

1415333v.1

14.     Defendant Ziade is an individual resident of Nevada who controls each member of Partner-CO and did so to commit the unlawful acts alleged herein. Defendant Ziade is the alter ego of Partner-CO and of each of its member entities.  Defendant Ziade has held himself out as a "Partner" of or for Plaintiff NGI, e.g.:


アメリカ全土で大成功をおさめたアメリカ不動産業界トップリーダー。
ウォールストリートジャーナル誌をはじめとする全米主要紙で特集される。
CNN や FOX などの全米テレビ番組にて「アメリカ不動産投資の成功者」としてのインタビューを受け、「アメリカ不動産投資成功の秘訣」についての教育番組など、400 回以上アメリカ全土で放映。
不動産投資成功の要となる、「物件の選定」「リスク管理」「出口戦略」に非常に長け、アメリカ住宅関連の取引以外にも、全米のホテル開発、住宅開発も手掛ける。
ネバダ州不動産プロフェッショナル第１位を５年以上連続獲得。
現在、不動産の設計、開発、販売、管理から IT、メディカルまで 20 数社のホールディングス会社の代表

NIKKEI GLOBAL Executive Partner    Appleton Properties    CEO （フィリッペ・ジアード）

(A portion of a flyer approved by Defendant Ziade on behalf of Defendant Partner-CO, with Defendant Ziade pictured and identified as an "Executive Partner" of the Plaintiff NGI for himself and as CEO of defendant Appleton.)

15.     Defendant Ziade is not entitled to a corporate-veil defense because such a defense would sanction a fraud; or, by his conduct, Defendant Ziade is a general partner of the General Partnership, and of Defendant Partner-CO, and of each of its general partners Defendants identified below.  Unless stated otherwise, for all allegations stated herein, Defendant Ziade acted: for himself; and as a principal on behalf of Partner-CO; for each general-partner of Partner-CO, except NGI; and for the Partner-CO Defendants.

16.     Defendant Nassar is an individual resident of Nevada and is a general partner of Defendant Partner-CO.  By his conduct, Defendant Nassar has authority to act on behalf of the defendant general-partners of Partner-CO except NGI, and the Partner-CO Defendants.

17.     Defendant Appleton Properties, LLC ("Appleton," as identified in the image above), created April 17, 2008, is a Nevada limited liability company and, by its conduct, Appleton is a

1415333v.1

general partner of Partner-CO.  Appleton is also a valuable brand name that is rightfully owned by NGI and Partner-CO jointly.

18.    Defendant Z Leb Group, LLC, ("Z-Leb"), created September 17, 2009, is a Nevada limited liability company and, by its conduct, Z Leb is a general partner of Partner-CO.  Z Leb is also a valuable brand name that is rightfully owned by NGI and Partner-CO jointly.

19.    Defendant Progressive Construction, Inc. ("Progressive Co" a/k/a "Growth Construction"), created July 30, 2012, is a Nevada corporation and, by its conduct, Progressive Co is a general partner of Partner-CO.  Progressive Construction and Growth Construction are valuable brand names that are rightfully owned by NGI and Partner-CO jointly.

20.    Defendant Growth Development, LLC ("Growth Development" a/k/a "Growth Construction"), created August 10, 2012, is a Nevada limited liability company and, by its conduct, Growth Development is a general partner of Partner-CO.  Growth Development is also a valuable brand name that is rightfully owned by NGI and Partner-CO jointly.

21.    Defendant Vibrant Realty, LLC ("Vibrant"), created August 10, 2012, is a Nevada limited liability company and, by its conduct, Vibrant is a general partner of Partner-CO.  Vibrant is also a valuable brand name that is rightfully owned by NGI and Partner-CO jointly.

22.    Defendant AJ Properties International, LLC ("AJ1"), created April 4, 2013, is a Nevada limited liability company and, by its conduct, AJ1 is a general partner of Partner-CO.

23.    Defendant AJ Properties International Series 2 LLC ("AJ2"), created July 30, 2014, is a Nevada limited liability company and, by its conduct, AJ2 is a general partner of Partner-CO.

24.    Defendant Growth Holdings, LLC, ("Growth Holdings"), created March 19, 2015, is a Nevada limited liability company and, by its conduct, Growth Holdings is a general partner of Partner-CO:

1415333v.1

(An excerpt from informational materials prepared with Defendant Ziade, Growth Holdings identified as "IN PARTNERSHIP WITH," Plaintiff NGI). Growth Holdings a/k/a "GH" are also valuable brand names that are rightfully owned by NGI and Partner-CO jointly.

25.     Defendant Growth Luxury Homes, LLC (a/k/a "GLH"), created July 28, 2014, is a Nevada limited liability company, and, by its conduct, GLH is a general partner of Partner-CO. GLH is a valuable brand name as intellectual property that is jointly owned by NGI and Partner-CO.

26.     Defendant Growth Luxury Realty, LLC (a/k/a "GLR"), created September 19, 2017, is a Nevada limited liability company, and, by its conduct, Growth Luxury Realty is a general partner of Partner-CO. GLR is a valuable brand name that is jointly owned by NGI and Partner-CO.

27.     30 Pebble Dunes, LLC ("30-PD"), created March 1, 2011, is a Nevada limited liability company and, by its conduct, 30-PD might be a general partner of Partner-CO.

28.     Defendants Partner-CO, Ziade, Nassar, Appleton, Z-Leb, Progressive Co, Growth Development, Vibrant, AJ1, AJ2, Growth Holdings, GLH, GLR, and 30-PD are collectively referred to as the "Partner-CO Defendants."

### C.     The Hirooka-CO Defendants:

29.     Defendant Yoshihiro Hirooka ("Yoshihiro") is a resident of Japan or Singapore with substantial ties to Nevada including ownership and other interests in real property in or near Las

7

Vegas, Nevada. Yoshihiro signed a Non-Disclosure and Non-Circumvention Agreement ("NC-NDA") dated March 26, 2016 that protects NGI's trade secrets and confidential and proprietary information and materials.

30. Yoshihiro has misappropriated and used the trade secrets of NGI (and of the General Partnership) and engaged in other unlawful acts for the purpose of harming NGI in Nevada.

31. Defendant Yoshimi Hirooka ("Yoshimi") is a resident of Japan or Singapore, with substantial ties to Nevada, including ownership and other interests in real property in or near Las Vegas, Nevada. Yoshimi signed a NC-NDA with NGI dated February 17, 2017 that protects NGI's trade secrets and confidential and proprietary information and materials.

32. Yoshimi and Yoshihiro are brothers and are representatives and principals of and exercise control over Hirooka Family Office, Ltd. ("Hirooka-FO").

33. Defendant Hirooka-FO is a fictional entity referenced in the NC-NDAs and in an improper complaint filed in State Court.[2]

34. Defendants Hirooka-FO, Yoshihiro, and Yoshimi are collectively referred to as the "Hirooka-CO Defendants."

### III.    VENUE

35. Venue is proper in this judicial district under 28 U.S.C. §1391(c) and 28 U.S.C. §1391(b)(3), because Defendants are subject to personal jurisdiction in this judicial district and thus are deemed to reside in this judicial district.

---

[2]  Plaintiffs in the State Court action are two defendants in this action: Defendant Yoshihiro and Defendant HFO. However, the narrow claims there comprise a very small portion of this case. The case was filed without seeking relief from the forum selection clause, which is addressed below under the claim for declaratory relief. (Case No. A-18-775773-C, filed June 7, 2018).

1415333v.1

36.     Venue is proper in this judicial district under 28 U.S.C. §1391(b)(2) because a substantial part of the damages giving rise to the claims alleged herein are assessed and measured in this judicial district.

37.     Venue is proper in this judicial district pursuant 28 U.S.C. § 1391(c) because Plaintiff is conducting substantial business activities within this district.

### IV.     GENERAL ALLEGATIONS

**A.     *Partner-CO Defendants' Agreement with NGI through the General Partnership:***

38.     Since 2013, Plaintiff NGI has invested substantial time and money developing the General Partnership including the respective brand names using NGI's investments of time and money, and NGI's trade secrets, which are described in paragraphs 166-167 and 187-188.

39.     The Partner-CO Defendants, primarily through Defendant Ziade, have consistently held themselves out as a "PARTNER" with NGI:



1415333v.1

40.     Defendant Ziade expressly held himself, and the other Partner-CO Defendants including but not limited to Defendants Appleton, Growth Holdings, Vibrant, as being "IN PARTNERSHIP WITH" with NGI.

41.     Since 2013, the Partner-CO Defendants have accepted and retained the benefits of NGI's investments of time and money to develop their General Partnership, the brands, and its proprietary business processes and information incorporating NGI's trade secret and confidential and proprietary information, which expressly included information about client contacts, prices, fees, service-mix, processes, etc., as described herein.

42.     Defendant Ziade provided to NGI regular assurances of his fidelity to their exclusive business partnership—both orally and in writing—and his commitment to "share fees or profit fairly" with NGI.

43.     Partners owe each other fiduciary duties of loyalty and care, which necessarily included protection of NGI's trade secrets of NGI and the information NGI shared with the Partner-CO Defendants through the General Partnership.

44.     NGI's reliance in good faith on their partnership cannot be overstated, as NGI relied to its ultimate detriment on the Partner-CO Defendants' commitments not to engage in precisely the harmful conduct in which the Partner-CO Defendants engaged, as alleged herein.

45.     Since 2013, the Partner-CO Defendants owed NGI a fiduciary duty of loyalty especially with respect to NGI's market—i.e., Japanese joint-venture partners for projects involving the General Partnership in or near Las Vegas, Nevada.

46.     In 2013, Defendant Ziade (for himself and on behalf of the Partner-CO Defendants) signed a written agreement with NGI regarding their General Partnership:

   a.   to be "bound by a duty of Confidentiality with respect to their sources and contacts";

10

1415333v.1

b.  to "maintain complete confidentiality regarding each other [*sic*] business sources and/or their Affiliates and will disclose such business sources only to the named parties pursuant to the express written permission of this party who made available the source";

c.  "that they will not disclose names, addresses email addresses, telephone … to any contacts by either party to third parties and that they each recognize such contacts as the exclusive property of the respective parties and they will not enter into any direct negotiations or transactions with such contracts revealed by the other party";

d.  "[t]he parties will not in any manner solicit, nor accept any business in any manner from sources or their affiliates, which sources were made available through this agreement, without the express permission of the party who made available the source";

e.  "in the event of circumvention of this Agreement by either party, directly or indirectly, the circumvented party shall be entitled to a legal monetary penalty equal to the maximum service it should realize from such a transaction plus any and all expenses, including but not limited to all legal costs and expenses incurred to recover the lost revenue"; and

f.  "this Agreement is valid for any and all transaction [*sic*] between the parties herein," etc.

47.    Between 2013 and 2017, the Partner-CO Defendants had zero "sources" or "contacts" from Japan, except for those made available by NGI through this agreement—i.e., those sources and contacts owned exclusively by NGI, including, of course, the Hirooka-CO Defendants.

1415333v.1

**B.     *The Hirooka-CO Defendants' Unlawful Acts:***

48.     In early 2016, one of NGI's prospective clients, the Hirooka-CO Defendants, expressed interest in working with NGI.

49.     The Hirooka-CO Defendants had never competed against NGI and the Hirooka-CO Defendants had no experience performing NGI's work or performing services in NGI's markets.

50.     The Hirooka-CO Defendants claimed to have access to a network of potential clients from Hirooka-FO's work in Singapore and Japan, but no experience with real estate in the Continental United States.

51.     In on or about February or March of 2016, the Hirooka-CO Defendants asked to meet NGI's partner, Partner-CO.

52.     In March 2016, prior to meeting in person on behalf of the General Partnership, Defendant Partner-CO required the Hirooka-CO Defendants to sign a NC-NDA dated March 26, 2016, which served to protect the Partner-CO Defendants and NGI expressly as an "affiliate" and as a third-party beneficiary.

53.     The Hirooka-CO Defendants knew that the NC-NDA of March 26, 2016 was intended to benefit and protect NGI.

54.     The Hirooka-CO Defendants knew that NGI did in fact rely on the NC-NDA of March 26, 2016, which was foreseeable and obvious.

55.     NGI did in fact rely to its detriment on the Hirooka-CO Defendants' contractual duties under the NC-NDA of March 26, 2016.

56.     The Hirooka-CO Defendants breached the NC-NDA of March 26, 2016 and related duties several times, as alleged herein.

12

1415333v.1

57.    On or about April 1, 2016, NGI introduced its "source" the Hirooka-CO Defendants to the Partner-CO Defendants (through Defendant Ziade) at Roppongi Grand Hyatt hotel in Tokyo, where they conferred for approximately 20 minutes.

58.    By the time of that April 1, 2016 meeting, Defendant Ziade had regularly held himself and the Partner-CO Defendants as "partners" with NGI with respect to real estate projects in or near Las Vegas, Nevada, as alleged herein.

59.    Some of the Hirooka-CO Defendants' acquaintances became NGI's client contacts for the purpose of being selected as joint-venture partners for projects of the General Partnership.

60.    In on or about January 2017, NGI met with its clients and some of the Hirooka-CO Defendants' acquaintances.

61.    Defendant Ziade explained that he and the Partner-CO Defendants were exclusive partners with NGI.

62.    Some of the Hirooka-CO Defendants' acquaintances expressed interest in becoming clients of NGI, as joint-venturers with the General Partnership.

63.    The Hirooka-CO Defendants introduced Ms. AS to NGI and the Partner-CO Defendants.

64.    Ms. AS had been a business partner or acquaintance of Mr. TF, principal representative for Sansei AimConsul Inc. (a/k/a Sansei TimeMaster Ltd.), for a long time.

65.    Mr. TF, as owner and on behalf of Sansei AimConsul Inc., expressed interest in learning about NGI's projects with the Partner-CO Defendants in and near Las Vegas, Nevada.

66.    Both Sansei AimConsul Inc. and the Hirooka-CO Defendants engaged in discussions with NGI about opportunities to work with NGI.

67.    As of January 2017, the Hirooka-CO Defendants had never purchased, developed, or sold property in the Continental United States for investment purposes.

13

68.    Both Sansei AimConsul Inc. and the Hirooka-CO Defendants were eager to learn about NGI's business.

69.    Consistent with NGI's business practices, both Sansei AimConsul Inc. and the Hirooka-CO Defendants agreed to keep NGI's trade secrets (and other confidential and proprietary information) confidential, and not to compete against NGI as a condition for further discussions.

70.    In early 2017, NGI invited both Sansei AimConsul Inc. and the Hirooka-CO Defendants to become agents for NGI.

71.    While Sansei AimConsul Inc. became an agent of NGI, the Hirooka-CO Defendants countered that the Hirooka-CO Defendants wanted to be a partner with NGI, which put NGI and the Hirooka-CO Defendants at a temporary impasse.

72.    In early 2017, NGI asked the Hirooka-CO Defendants for another written memorialization of their promise not to compete or disclose confidential information involving NGI.

73.    On February 14, 2017, each partner of Hirooka-FO reconfirmed Defendant Hirooka-CO's prior commitments not to compete against NGI and not to disclose NGI's confidential information, as evidenced by a signed NC-NDA dated Feb. 17, 2017.  Yoshimi signed the NC-NDA on behalf of the Hirooka-CO Defendants.

74.    NGI's reliance in good faith on the NC-NDAs cannot be overstated, as NGI relied to its ultimate detriment on the Hirooka-CO Defendants' commitments not to engage in precisely the harmful conduct in which they engaged.

75.    On or about March 11, 2017, Partner-CO discussed with NGI an opportunity for the Hirooka-CO Defendants to purchase real property owned by the Partner-CO Defendants, which would be the Hirooka-CO Defendants' first property purchase in the Continental United States (in Las Vegas, Nevada).

76.    On March 22, 2017, Sansei AimConsul Inc. became an agent of NGI.

1415333v.1

77.    The Hirooka-CO Defendants knew that Sansei AimConsul Inc. entered into the agency agreement with NGI.

78.    The Partner-CO Defendants knew that Sansei AimConsul Inc. entered into the agency agreement with NGI.

79.    On or about March 24-26, 2017, the Hirooka-CO Defendants traveled through interstate commerce to Las Vegas, Nevada to meet with the General Partnership's representatives, including an introduction to NGI's confidential, proprietary, and trade secret client sources.

80.    During the first few months of 2017, the Hirooka-CO Defendants learned through interstate wire or mail, or both, valuable and confidential information about the General Partnership, including NGI's trade secrets and confidential and proprietary information.

81.    The Partner-CO Defendants knew that some of NGI's trade secrets and confidential and proprietary information and materials were not to be disclosed to the Hirooka-CO Defendants without NGI's authorization including but not limited to NGI's trade secret information about the service-mix, pricing, and profits allocated between NGI and other members of the General Partnership for the projects in or near the greater Las Vegas, Nevada area.  The Partner-CO Defendants knew that the unauthorized disclosure of NGI's trade secrets, including the foregoing confidential, proprietary and trade secret information, could be used by the Hirooka-CO Defendants or others to undermine and compete unfairly against NGI.

82.    In April 2017, NGI and the Hirooka-CO Defendants again met and conferred to discuss NGI's willingness to make the Hirooka-CO Defendants an agent.

83.    In response, the Hirooka-CO Defendants again attempted to persuade NGI to make them a partner, which NGI did not do.

84.    During this time, NGI was not required (and not willing) to share certain trade-secret information with the Hirooka-CO Defendants, including NGI's trade secrets about the service-mix,

15

pricing, and profits allocated between NGI and other members of the General Partnership for the projects in or near the greater Las Vegas, Nevada area.

85.    The Hirooka-CO Defendants then requested from the Partner-CO Defendants the very trade secrets and confidential and proprietary information owned by NGI that NGI did not want to nor authorize to be shared.

86.    On May 16, 2017, the Partner-CO Defendants (through Defendants Vibrant, Nassar, and under the direction of Defendant Ziade) unlawfully transmitted —by interstate wire or mail, or both—directly to the Hirooka-CO Defendants (and without NGI's knowledge or authorization) NGI's sensitive and highly-protected trade secrets including NGI's trade secrets about the service-mix, pricing, and profits allocated between NGI and other members of the General Partnership for the projects in or near the greater Las Vegas, Nevada area.  Prior to that unauthorized disclosure, NGI and the Partner-CO Defendants were the only persons and entities who had access to and knowledge of those particular trade secrets owned by NGI.

87.    Immediately prior to the Partner-CO Defendants' unauthorized disclosure of NGI's trade secrets (i.e., April-May 2017), the negotiations between NGI and the Hirooka-CO Defendants seemed on track for NGI to work with the Hirooka-CO Defendants in some way.  However, the negotiations broke down because of the Partner-CO's unauthorized disclosure of NGI's trade secrets and the Hirooka-CO Defendants' subsequent unlawful use of NGI's trade secrets.

88.    Pursuant to the NC-NDAs, the Hirooka-CO Defendants were not permitted to disclose or use such confidential trade secrets or to compete against NGI.  (Ex. 1-2.)

89.    Nevertheless, beginning in May of 2017, the Hirooka-CO Defendants made fraudulent demands—through the interstate wires or mails or both—that the Hirooka-CO Defendants were entitled to 80% of NGI's share of profits for four separate projects; and then a fifth; and a sixth; and a seventh; and an eighth, **all in or near Las Vegas, Nevada**.

1415333v.1

90.     Thereafter, the Hirooka-CO Defendants intentionally disrupted the contractual relationship between NGI and the Partner-CO Defendants, conspiring with the Partner-CO Defendants to withhold NGI's shares of NGI's profits and to convert prospective economic advantages for each of the eight projects and many more that followed.

91.     On or about June 4, 2017, Mr. TF (of Sansei AimConsul Inc.) conferred with the principals of NGI and confirmed that Ms. AS would be traveling to Las Vegas, Nevada, where NGI and the Partner-CO Defendants had several projects that Ms. AS could visit, if she wanted.

92.     On or about July 17-18, 2017, both NGI and the Partner-CO Defendants reminded the Hirooka-CO Defendants that that there was no legally permissible way for the Hirooka-CO Defendants to exclude NGI from its own General Partnership.

93.     On or about July 17-18, 2017, using interstate wire, or mails, or both, the Hirooka-CO Defendants began to publish fraudulent, false, and disparaging statements about NGI for the purpose of disrupting the General Partnership and to misdirect NGI's share of profits to the Hirooka-CO Defendants.

94.     In response, NGI informed the Hirooka-CO Defendants it that it would be consulting with a lawyer about the unlawful actions of the Hirooka-CO Defendants.

95.     On July 26, 2017, NGI re-confirmed in writing to the Hirooka-CO Defendants (and Defendant Ziade, on behalf of the Partner-CO Defendants) there were no "legal agreements between" the Hirooka-CO Defendants and NGI (or the General Partnership) that would give the Hirooka-CO Defendants any right to any profits of NGI and the General Partnership; and, NGI asked the Hirooka-CO Defendants to cease making disparaging statements about NGI's principals.

96.     Subsequently, however, the Partner-CO Defendants knowingly and wrongfully withheld NGI's share of the profits for the projects; and, Partner-CO wrongfully withheld NGI's share of profits for additional projects that had nothing to do with the Hirooka-CO Defendants.

97.     The Hirooka-CO Defendants engaged in a pattern of unlawful activities, including fraudulent claims to eight joint-venture projects under the General Partnership, and then additional projects where none of the Hirooka-CO Defendants' acquaintances had become clients of NGI.  The Hirooka-CO Defendants' interference endured and expanded to other projects in 2017 and 2018.

98.     The Hirooka-CO Defendants entered into an unlawful and tacit agreement to conspire with the Partner-CO Defendants—using interstate wires and mail—and they did so conspire for unlawful objectives including but not limited to the following:

    a.  for the Partner-CO Defendants to withhold NGI's share of profits for numerous joint ventures under the General Partnership, which continues to this day;

    b.  to misappropriate NGI's trade secrets and confidential and proprietary information and materials for the benefit of the Hirooka-CO Defendants;

    c.  to defame and disparage NGI by both the Hirooka-CO Defendants and the Partner-CO Defendants including in NGI's market, and to NGI's existing and prospective clients;

    d.  to intentionally interfere with NGI's existing contracts and prospective economic advantages;

    e.  for the Partner-CO Defendants to renounce and break-up the General Partnership with NGI; and,

    f.  for the Hirooka-CO Defendants to replace NGI in a new general partnership where the Hirooka-CO Defendants and the Partner-CO Defendants have used, and continue to use, NGI's trade secrets and confidential and proprietary information and materials.

99.     Using interstate wires and mail, the Hirooka-CO Defendants and the Partner-CO Defendants actually accomplished each of the unlawful objectives.

1415333v.1

100.    On or about August 11, 2017, Ms. AS and Mr. TF (of Sansei AimConsul Inc.) traveled to Nevada and spent time with the principals for NGI and the Partner-CO Defendants.

101.    In the evening of August 11, 2017, NGI's principals and the Partner-CO Defendants' principal (Defendant Ziade) spoke with Ms. AS and Mr. TF about discussing business the next day.

102.    However, Ms. AS and Mr. TF stated that they wanted some rest and preferred leisure time instead of discussing or visiting real estate properties.

103.    NGI's principals communicated this fact to the Hirooka-CO Defendants.

104.    Ms. AS expressed her lack of interest in owning real property in or near Las Vegas, Nevada.  Ms. AS stated that she did not want to own property in or near Las Vegas.

105.    Even so, when the Hirooka-CO Defendants arrived in Las Vegas in the evening of August 11, 2017, the Hirooka-CO Defendants repeatedly attempted contact with Ms. AS to revive the business meeting with the Partner-CO Defendants.

106.    The next day, the Hirooka-CO Defendants went around the principals of NGI, communicating with the Partner-CO Defendants through the interstate wires or mails, or both, attempting to go directly to the Partner-CO Defendants in direct competition with NGI.

107.    On August 12, 2017, the Hirooka-CO Defendants effectively persisted and persuaded Ms. AS to meet with the Partner-CO Defendants, but without the principals of NGI.

108.    The Hirooka-CO Defendants and the Partner-CO Defendants conspired for the purpose of harming NGI.

109.    On or about November 8, 2017, the Partner-CO Defendants communicated through the interstate wires or mails, or both, that the Partner-CO Defendants unilaterally sought to dissolve the General Partnership for the illicit purpose of competing against NGI with the Hirooka-CO Defendants, and to publish defamatory statements about NGI.

19

1415333v.1

110.     On or about November 28, 2017, Defendant Ziade, for the Partner-CO Defendants, traveled through interstate commerce and to Japan to meet with the Hirooka-CO Defendants for the unlawful purpose of competing against NGI with the Hirooka-CO Defendants.

111.     On or about December 1, 2017, the Hirooka-CO Defendants came to Las Vegas and began a series of illicit joint-ventures with the Partner-CO Defendants in direct competition with NGI.

112.     Since on or about May 16, 2017, the Hirooka-CO Defendants have misappropriated and used NGI's trade secrets and confidential and proprietary information and materials for the malicious purpose of conspiring with the Partner-CO Defendants (and others) to harm NGI and to commit numerous unlawful act, which the Defendants continue to do to this day.

**C.     Examples of the Partner-CO Defendants' Breaches of their Duties to NGI:**

113.     In on or about 2017 and 2018, NGI began discovering other evidence of a pattern of illegal conduct by Defendant Ziade and the Partner-CO Defendants as demonstrated in two of the joint-ventures.

114.     Among the projects, the General Partnership managed two particular joint-venture projects under two separate Nevada limited-liability companies referred to as Defendant AJ1 (April 2013) and Defendant AJ2 (July 2014), respectively.

115.     Without NGI's knowledge, the Partner-CO Defendants engaged in multiple acts of flagrant self-dealing, and the Partner-CO Defendants purposefully delayed these projects to work on Partner-CO's own secret projects outside of the General Partnership to the detriment of, and in breach of their duties to NGI and NGI's joint-venture clients.

116.     In on or about February to March of 2013, the Partner-CO Defendants recommended a joint–venture for the General Partnership to purchase and sell properties over a very short term using the entity AJ1.

117.    In June 2014, after approximately two successful short-term joint ventures under Defendant AJ1, Defendant Ziade on behalf of the Partner-CO Defendants recommended that the Partner-CO Defendants, NGI, and NGI's joint-venture clients delay receipt of their profits to keep most of their money in Defendant AJ1 for 360 days: to purchase raw land, located at 19 Pebble Hills, Las Vegas, Nevada; to construct a luxury home; to sell the home; and to share higher profits, which Defendant Ziade represented would be higher than 20% per year.

118.    The General Partnership used Defendant AJ1 as a 360-day short-term joint-venture to acquire the land for $300,000.00 (which Defendant Ziade misrepresented to be the financial security for NGI and NGI's joint-venture clients in Defendant AJ1), construct a luxury home (additional security), and sell the property.

119.    Notably, however, prior to acquiring the underlying raw land for $300,000.00 for Defendant AJ1, the Partner-CO Defendants concealed from NGI the material fact that the Partner-CO Defendants already had purchased the land for merely $127,500.00 through Defendant Z Leb on December 21, 2012.

120.    Without disclosing their self-dealing and concealment of material facts, the Partner-CO Defendants used interstate wires or mails to assess charges to NGI's joint venture clients of $300,000.00—more than double the purchase price paid by the Partner-CO Defendants.

121.    The Partner-CO Defendants used interstate wires or mails to mislead and conceal from NGI the material fact that the Partner-CO Defendants planned to sell the raw land to the AJ1 project at more than double the price that the Partner-CO Defendants paid.

122.    The Partner-CO Defendants derived income of $172,500.00 from their self-dealing and concealment of material information from NGI; and the Partner-CO Defendants used that income of $172,500.00 to acquire an interest in and to operate its enterprise—which included the Partner-CO Defendants' interests/ownership in, and control, over Defendant AJ1.

21

1415333v.1

123.    In on or about May to June of 2014, the Partner-CO Defendants concocted their scheme to defraud NGI and its joint-venture clients by using the interstate wire or mail, or both to persuade NGI to believe that Defendant AJ1 would acquire the land in good faith for $300,000.00 for the joint-venture, AJ1; the construction would be completed within 360 days; and, the return to NGI and its joint-venture clients would be 22%.

124.    NGI fulfilled its side in good faith for AJ1, but the Partner-CO Defendants defrauded NGI regarding the ownership of the underlying property.  The Partner-CO Defendants deliberately and substantially delayed work on the AJ1 project in violation of their duties to NGI.

125.    The Partner-CO Defendants never transferred ownership of the property from Partner-CO to AJ1, which was intentional, fraudulent, and significantly increased the risks to NGI, which the Partner-CO Defendants knew.

126.    Without knowledge of the Partner-CO Defendants' fraud, during 2015 and 2016, NGI and the Partner-CO Defendants continued to work together as partners through the General Partnership, sharing in costs and profits, and holding themselves out to each other and to the public as committed/exclusive partners.

127.    By June 2016, however, the AJ1 project was a full year behind the expectations agreed to by the Partner-CO Defendants because of Partner-CO's breaches of their duties to NGI.

128.    Repeatedly, the Partner-CO Defendants informed NGI that the Home Owners Association, or HOA, had withheld permission for construction as the Partner-CO Defendants' excuse for delays, but without any evidence.

129.    Yet, during that time, the Partner-CO Defendants proceeded on other projects undisclosed to NGI, in the same neighborhood, under the same HOA (e.g., 30 PD), without seeming to suffer the same delays.

1415333v.1

130.    The Partner-CO Defendants' undisclosed work on other projects, to the detriment and expense of NGI, constituted multiple breaches of Partner-CO's duties to NGI.

131.    In June 2016, NGI told the Partner-CO Defendants that NGI and their joint-venture clients were concerned about the Partner-CO Defendants' delays with AJ1, which were entirely caused by Defendant Ziade's bad faith and material misrepresentations and omissions of fact to NGI on behalf of the Partner-CO Defendants.

132.    NGI did not know then that the Partner-CO Defendants were allocating their time and resources to different, unlawful or undisclosed, projects and were comingling the funds and assets of AJ1 with AJ2, Growth Construction, Progressive Construction, Z Leb, and many other affiliates of the Partner-CO Defendants, and unlawfully using the income to operate those projects.

133.    In response, on July 6, 2016, the Partner-CO Defendants concocted another scheme to defraud NGI by using the interstate wire or mail, or both, to appear like another genuine excuse for the delays with the AJ1 project.

134.    Defendant Ziade, on behalf of the Partner-CO Defendants, instructed a Mr. "Ziad Gharios," identified as Sr. Operations Manager for "Growth Construction," to write a sham e-mail purporting to be delivered to Philippe (and Patrick) Ziade to explain why the AJ1 project would be delayed for *another* 4 months.

135.    Defendant Ziade, on behalf of the Partner-CO Defendants, forwarded that e-mail via interstate wire or mail, or both, to NGI trying to pass it off as legitimate; but it was in fact a scheme by the Partner-CO Defendants to delay and defraud NGI; and to permit the Partner-CO Defendants to make further unlawful use of income from NGI to operate different, unlawful or undisclosed, projects.

1415333v.1

136.    During the next four months, the Partner-CO Defendants engaged in serial fraudulent communications for the purpose of misleading and delaying NGI while the Partner-CO Defendants comingled funds and secretly worked on their separate undisclosed project(s).

137.    After four months passed, in November 2016, NGI communicated again to the Partner-CO Defendants (through Defendant Ziade) that NGI and its joint-venture clients invested in the AJ1 project were losing trust in the Partner-CO Defendants and were extremely nervous.  At that time, NGI and its joint-venture clients did not know that despite their substantial investment of funds they had no legal title to the AJ1 property because the Partner-CO Defendants had retained complete ownership of the underlying security/property.

138.    In response, on December 28, 2016, the Partner-CO Defendants concocted another scheme to defraud NGI and its joint-venture clients by using the interstate wire or mail, or both, to deliver a sham/falsified Certificate of Occupancy for the AJ1 project, making it appear to be genuine for the purpose of misleading, delaying, and defrauding NGI.

139.    The Partner-CO Defendants falsified the owner's name on the Certificate of Occupancy to state that Defendant AJ1 owned the property.  Underneath the falsified owner name, the Certificate of Occupancy showed that Defendant Z Leb owned the property (for Defendant Ziade and Defendant Partner-CO, not AJ1).

140.    At all times, the Partner-CO Defendants ensured that Defendant AJ1 never owned the property, and the Partner-CO Defendants knew that that material fact would cause NGI to discover that its ownership in AJ1 was entirely unsecured (and uninsured)—which was an obvious, unjustifiable, fraudulent, and material breach of the Partner-CO Defendants' legal duties to NGI, the General Partnership, and the AJ1 joint venture.

1415333v.1

141.    By keeping the property in the Partner-CO Defendants' own separately-controlled company, Defendant Z Leb, the Partner-CO Defendants knew that it could have absconded with NGI's money at any time, and leave AJ1 with nothing.

142.    Defendant Ziade allocated all risks to NGI and Partner-CO's joint-venture partners, including NGI's joint-venture clients, without disclosing that material fact to them.

143.    Defendant Ziade kept himself and his entities over-secured to the detriment of NGI and NGI's joint-venture clients, which Defendant Ziade fraudulently concealed from NGI and actively covered up on behalf of the Partner-CO Defendants.

144.    The Partner-CO Defendants engaged in their unlawful activities to derive security for, or insurance of, the risks for the property, while passing the costs of such insurance to NGI without NGI's knowledge.

145.    The Partner-CO Defendants intentionally and fraudulently hedged the Partner-CO Defendants' investment at NGI's expense.

146.    Thus, as alleged above, in December 2016, the Partner-CO Defendants unlawfully altered the Certificate of Occupancy, a government-issued document, to conceal this material fact from NGI.

147.    The Partner-CO Defendants used interstate mails or wire to transmit the fake Certificate of Occupancy to NGI, falsely showing AJ1 as the owner of the underlying property for the purpose of concealing the Partner-CO Defendants' pattern of unlawful activities.

148.    As alleged above, beginning in 2017, the Partner-CO Defendants knowingly began engaging in illicit business deals with the Hirooka-CO Defendants, which had been a source or client contact of NGI.

149.    In November 2017, the Partner-CO Defendants announced/stated that the Partner-CO Defendants had unilaterally ceased operations with NGI, while keeping NGI's money, and

1415333v.1

exploiting NGI's client contacts, trade secrets, and confidential and proprietary information and materials.

150.    In 2017 and 2018, and in collusion with the Hirooka-CO Defendants, the Partner-CO Defendants began withholding NGI's shares of profits, misappropriating NGI's trade secrets and confidential and proprietary information and materials, and spreading false, disparaging, and defamatory statements about NGI, which has caused substantial hardship on NGI.

151.    Near the beginning of 2018, the Partner-CO Defendants again maliciously published false statements intended to harm NGI's reputation by, in part, accusing NGI of lying about Partner-CO's exclusive relationship/partnership with NGI.

152.    Near the beginning of 2018, the Hirooka-CO Defendants maliciously published false statements intended to harm NGI's reputation by, in part, accusing NGI of lying about Partner-CO's relationship/partnership with NGI.

153.    On March 10, 2018, the Hirooka-CO Defendants made numerous false and disparaging statements for the purpose of harming NGI including, in part, falsely stating that the Partner-CO Defendants dissolved the relationship with NGI because NGI was involved in too many lawsuits, which was intended to undermine NGI's reputation.

154.    There were no lawsuits on or before March 10, 2018 involving NGI.

155.    Instead, NGI was being forced to bring this case.

156.    The Hirooka-CO Defendants' disparaging statements were intended to cause harm to NGI directly related to its business in Las Vegas, Nevada.

157.    Upon information and belief, Defendant Ziade was present when the Hirooka-CO Defendants, acting through Defendants Yoshihiro and Yoshimi, published some of their false and defamatory statements, which included false and defamatory statements about NGI's business practices in the General Partnership and with its clients described in paragraph 290-291.   Upon

1415333v.1

information and Defendant Ziade was present for or learned of those false and defamatory statements about NGI, and did not correct them, and thereby adopted those false and defamatory statements as his own, on his own behalf and on behalf of the Partner-CO Defendants.

158.    In 2018, the Partner-CO Defendants and Hirooka-CO Defendants circumvented NGI for at least three separate projects in Nevada, causing substantial economic damage to NGI and to its reputation.

159.    The Partner-CO Defendants misappropriated NGI's confidential and proprietary information and materials, including NGI's *confidential* trade secrets, and conveyed the information to NGI's new direct competitor, the Hirooka-CO Defendants, without consulting with or authorization from NGI and with full knowledge of the Partner-CO Defendants and the Hirooka-CO Defendants that such collusion and misappropriation would serve to harm NGI.

160.    It would be unjust to permit the Partner-CO Defendants and the Hirooka-CO Defendants to retain the benefit of NGI's investments of time, money, and ownership of NGI's trade secrets and confidential and proprietary information and materials, and the brand names jointly developed through the General Partnership.

161.    NGI has been and will be damaged by the Partner-CO Defendants' unjust retention of NGI's trade secrets and confidential and proprietary information and materials, and the brand names jointly developed through the General Partnership.

162.    Defendants' past, current, and future use and misappropriation of NGI's trade secrets and confidential and proprietary information and materials has damaged and will continue to damage NGI severely.

163.    Defendants have colluded in an attempt to combine their enterprises for the purpose of unfairly eliminating or minimizing NGI's competition in the relevant markets, all in violation of their legal duties to NGI.

1415333v.1

1
2
3
4

# CAUSES OF ACTION

## I.

### MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836) (ALL DEFENDANTS)[3]

5        164.    Plaintiff NGI restates and realleges each and every allegation contained in Paragraphs

6  1 through 163 of this First Amended Complaint, and incorporates the same by reference as though

7  fully set forth herein.

8        165.    Plaintiff NGI is the owner of trade secrets, as that term is defined by 18 U.S.C. §

9  1839(3), because it is the entity in whom or in which rightful or equitable title to, or license in, the

10 trade secrets are reposed.

11

12       166.    NGI's wholly owned trade secrets protected under 18 U.S.C. § 1839(3) include, but

13 are not limited to, the following:  NGI's valuable and exclusive client-network of Japanese joint-

14 venture partners and investors for real estate projects in the United States ("NGI's Clients"); NGI's

15 unique and proprietary information about NGI's Clients, who mostly (or exclusively) reside outside

16 of the United States, including but not limited to their names, contact information, financial

17 information, the amounts of their past investments, the types of projects in which they have invested,

18 the amounts of their expected returns on investments, the duration of their investments, their risk

19 tolerance, and future projects in which they are interested in investing; NGI's unique and proprietary

20 services and processes it uses to identify from among NGI's Clients the optimal sub-groups of

21 Japanese clients as short-term joint-venturers in projects such as those with the General Partnership

22 in or near the greater Las Vegas, Nevada area; NGI's project-selection criteria, including but not

23
24

25 _____
26 [3]  Following some discovery, NGI reserves the right to seek leave to amend its complaint to add a
   civil RICO claim based upon Defendants' misappropriation of NGI's trade secrets in violation of the
27 Defend Trade Secrets Act ("DTSA").  Violations of the criminal provisions of the DTSA are
   included in the definition of "racketeering activity."  *See* 18 U.S.C. § 1961(1) (citing section 1832,
28 relating to "theft of trade secrets").

limited to the unique services and proprietary processes it uses to initiate, coordinate, and sustain each project and how it screens, selects, and manages those projects; NGI's mix of investment projects; NGI's mix of services; NGI's pricing; NGI's fees; NGI's other unique and proprietary business processes; NGI's gross revenues; NGI's operating expenses; NGI's net profits; and compilations of that information.

167.    NGI also owns trade secrets protected under 18 U.S.C. § 1839(3) that arise from its projects with the General Partnership in or near the greater Las Vegas, Nevada area, including but not limited to the service-mix, pricing, operating expenses, and gross revenues and net profits allocated between NGI and other members of the General Partnership for the projects in or near the greater Las Vegas, Nevada area and compilations of that information.  Those trade secrets cannot be acquired, disclosed or used to or by persons or entities outside of the General Partnership (except for attorneys, accountants, or agents of one or more of the members of the General Partnership who need to know that information) without NGI's consent.

168.    NGI's trade secrets relate to a service used or intended for use in interstate or foreign commerce, to wit, allowing NGI's Clients, who mostly (or exclusively) reside outside of the United States, to invest in real estate projects in the United States, including projects such as those with the General Partnership in or near the greater Las Vegas, Nevada area.

169.    NGI invested time, money, research and other valuable resources over many years to develop its trade secrets.

170.    NGI's trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

171.    NGI has taken reasonable measures to preserving the secrecy of its trade secret information, including but not limited to the use of nondisclosure agreements, password-protected

1415333v.1

computers and networks, limiting the people who have access to the information, and securing its trade secrets so access is limited to authorized personnel.

172.    Among NGI's trade secrets that arise from its projects with the General Partnership in or near the greater Las Vegas, Nevada area, information about the service-mix, pricing, and gross and net profits allocated between NGI and other members of the General Partnership for the projects in or near the greater Las Vegas, Nevada area and compilations of that information, NGI has in fact not authorized that information to be shared with anyone outside of the General Partnership.

173.    As a condition to being provided access to some of NGI's trade secrets, NGI required that those to be provided with that access first agree to maintain and preserve its secrecy through non-disclosure agreements:

a.    In 2013, Defendant Ziade, in his personal capacity and in his capacity as a principal and representative the Partner-CO Defendants, signed a written agreement with NGI regarding their General Partnership that required maintaining the confidentiality, non-disclosure and restrictions on use of NGI's trade secrets except as authorized by NGI;

b.    Defendant Hirooka-CO signed the NC-NDA of March 26, 2016 that required maintaining the confidentiality, non-disclosure and restrictions on use of NGI's trade secrets except as authorized by NGI;

c.    Defendant Yoshihiro signed the NC-NDA of March 26, 2016 that required maintaining the confidentiality, non-disclosure and restrictions on use of NGI's trade secrets except as authorized by NGI;

d.    In early 2017, Defendant Hirooka-CO and Sansei AimCounsel Inc. agreed to maintain the confidentiality, non-disclosure and restrictions on use of NGI's trade secrets except as authorized by NGI, as a condition of continuing discussions of becoming agents for NGI;

1415333v.1

e.  In early 2017, Defendant Hirooka-CO provided another written memorialization of Hirooka-CO's agreement to maintain the confidentiality, non-disclosure and restrictions on use of NGI's trade secrets except as authorized by NGI;

f.  On February 14, 2017, each partner of Defendant Hirooka-CO reconfirmed Defendant Hirooka-CO's prior agreement to maintain the confidentiality, non-disclosure and restrictions on use of NGI's trade secrets except as authorized by NGI;

g.  Defendant Yoshimi signed the NC-NDA of February 17, 2017 that required maintaining the confidentiality, non-disclosure and restrictions on use of NGI's trade secrets except as authorized by NGI;

h.  Sansei AimCounsel Inc., as part of its agreement to become an agent of NGI on March 22, 2017, agreed to maintain the confidentiality, non-disclosure and restrictions on use of NGI's trade secrets except as authorized by NGI.

174.    In reliance on their agreement to maintain and preserve the secrecy of NGI's trade secrets through their non-disclosure agreements, NGI provided the Partner-CO Defendants with access to some of NGI's trade secrets from 2013 until late 2017, with communication of NGI's trade secrets accomplished through interstate or foreign commerce.

175.    In reliance on their agreement to maintain and preserve the secrecy of NGI's trade secrets through their non-disclosure agreements, NGI provided the Hirooka-CO Defendants with access to some of NGI's trade secrets relating to NGI's projects with the General Partnership in or near the greater Las Vegas, Nevada area beginning in or about April 2016 and continuing through late 2017.  NGI did not provide to the Hirooka-CO Defendants, nor did NGI authorize the Partner-CO Defendants to provide to them, NGI's trade secret information about the service-mix, pricing, and gross revenues and net profits allocated between NGI and other members of the General

31

Partnership for the projects in or near the greater Las Vegas, Nevada area. Communication of NGI's trade secrets was accomplished through interstate or foreign commerce.

176.    Defendant Ziade (in his personal capacity and in his capacity as a principal and representative the Partner-CO Defendants), the Partner-CO Defendants, Defendant Hirooka-CO, and Defendants Yoshimi and Yoshihiro (in their personal capacities and in their capacities as partners of Defendant Hirooka-CO), each had a duty to maintain the secrecy of NGI's trade secrets.

177.    On or after May 11, 2016, Defendants misappropriated NGI's trade secrets through improper means including but not limited to theft and/or the breach or inducement of a breach of a duty to NGI to maintain the secrecy of those trade secrets.

178.    To the extent that some of the conduct by one or more of the defendants occurred outside of the United States, one or more acts in furtherance of the offense were committed in the United States.

179.    On May 16, 2017, the Partner-CO Defendants, through Defendants Vibrant and Nassar, and acting under the direction of Defendant Ziade, disclosed to Defendant Hirooka-CO NGI's trade secret information about the service-mix, pricing, and profits allocated between NGI and other members of the General Partnership for the projects in or near the greater Las Vegas, Nevada area, all without NGI's express or implied consent. At the time of the disclosure, Defendants Ziade, Nassar, and the other Partner-CO Defendants including Defendant Vibrant knew that they owed a duty to NGI to maintain the secrecy of the trade secrets or limit the uses of the trade secrets, that they knew or had reason to know that the information they disclosed included NGI's trade secrets, and that those trade secrets were not to be transmitted to anyone outside of the General Partnership.

180.    Upon information and belief, the Hirooka-CO Defendants induced the breach of the duty to maintain secrecy of NGI's trade secrets that Defendants Ziade, Nassar, and the other Partner-

CO Defendants including Defendant Vibrant owed to NGI. At the time the Hirooka-CO Defendants acquired NGI's trade secret information about the service-mix, pricing, and profits allocated between NGI and other members of the General Partnership for the projects in or near the greater Las Vegas, Nevada area, they knew or had reason to know that the information they acquired included NGI's trade secrets and that their knowledge of NGI's trade secrets was derived from or through persons or entities who owed a duty to NGI to maintain the secrecy of or limit the use of the trade secrets.

181.    Defendants' actions in misappropriating NGI's trade secrets were willful and malicious. At the time of their misappropriation, Defendant Ziade, Defendant Nassar, and the other Partner-CO Defendants including Defendant Vibrant knew that the Hirooka-CO Defendants intended to and actually did use NGI's trade secrets to directly compete with NGI. The Hirooka-CO Defendants knew that their misappropriation of NGI's trade secrets breached their contractual duty to NGI not to use those trade secrets or to compete against NGI.

182.    NGI has suffered damages as a result of Defendants' misappropriation of NGI's trade secrets in an amount in excess of $75,000.00.

183.    NGI is entitled to equitable relief because Defendants' misappropriation of NGI's trade secrets is continuing and has caused NGI to suffer irreparable injury for which there is no adequate remedy at law.

184.    Pursuant to 18 U.S.C. § 1836(b)(3), NGI is entitled to remedies for Defendants' misappropriation of its trade secrets, including but not limited to the following:

    a.    Injunctive relief to remedy Defendants' misappropriation of NGI's trade secrets on such terms as the Court deems reasonable;

    b.    If extraordinary circumstances are present, an order providing for the seizure of property necessary to prevent the propagation or dissemination of the trade secrets that are the subject of the action;

33

    c.   An award of damages for NGI's actual loss caused by Defendants' misappropriation of NGI's trade secrets, including but not limited to damages for any unjust enrichment caused by the misappropriation of the trade secrets that is not addressed in computing damages for actual loss;

    d.   Exemplary damages in an amount not more than 2 times the amount of the damages awarded;

    e.   An award of NGI's reasonable attorneys' fees and costs; and

    f.   Such other relief as the Court may determine is appropriate.

## II.

### MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF NEVADA'S UNIFORM TRADE SECRETS ACT (ALL DEFENDANTS)

185.    Plaintiff NGI restates and realleges each and every allegation contained in Paragraphs 1 through 184 of this First Amended Complaint, and incorporates the same by reference as though fully set forth herein.

186.    Plaintiff NGI is the owner of trade secrets, as that term is defined by N.R.S. § 600A.030(3), because it is the entity that holds legal or equitable title to a trade secret.

187.    NGI's wholly owned trade secrets protected under N.R.S. § 600A.030(5) include, but are not limited to, the following: NGI's valuable and exclusive client-network of Japanese joint-venture partners and investors for real estate projects in the United States ("NGI's Clients"); NGI's unique and proprietary information about NGI's Clients, who mostly (or exclusively) reside outside of the United States, including but not limited to their names, contact information, financial information, the amounts of their past investments, the types of projects in which they have invested, the amounts of their expected returns on investments, the duration of their investments, their risk tolerance, and future projects in which they are interested in investing; NGI's unique and proprietary

1415333v.1

services and processes it uses to identify from among NGI's Clients the optimal sub-groups of Japanese clients as short-term joint-venturers in projects such as those with the General Partnership in or near the greater Las Vegas, Nevada area; NGI's project-selection criteria, including but not limited to the unique services and proprietary processes it uses to initiate, coordinate, and sustain each project and how it screens, selects, and manages those projects; NGI's mix of investment projects; NGI's mix of services; NGI's pricing; NGI's fees; NGI's other unique and proprietary business processes; NGI's gross revenues; NGI's operating expenses; NGI's net profits; and compilations of that information.

188.    NGI also owns trade secrets protected under N.R.S. § 600A.030(5) that arise from its projects with the General Partnership in or near the greater Las Vegas, Nevada area, including but not limited to the service-mix, pricing, operating expenses, and gross revenues and net profits allocated between NGI and other members of the General Partnership for the projects in or near the greater Las Vegas, Nevada area and compilations of that information.  Those trade secrets cannot be acquired, disclosed or used to persons or entities outside of the General Partnership (except for attorneys, accountants, or agents of one or more of the members of the General Partnership who need to know that information) without NGI's consent.

189.    NGI invested time, money, research and other valuable resources over many years to develop its trade secrets.

190.    NGI's trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by the public or any other persons who can obtain commercial or economic value from their disclosure or use.

191.    NGI's trade secrets are the subject of efforts that are reasonable under the circumstances to maintain their secrecy, including but not limited to the use of nondisclosure

1415333v.1

agreements, password-protected computers and networks, limiting the people who have access to the information, and securing its trade secrets so access is limited to authorized personnel.

192.    Among NGI's trade secrets that arise from its projects with the General Partnership in or near the greater Las Vegas, Nevada area, information about the service-mix, pricing, and gross revenues and net profits allocated between NGI and other members of the General Partnership for the projects in or near the greater Las Vegas, Nevada area and compilations of that information, NGI has in fact not authorized that information to be shared with anyone outside of the General Partnership.

193.    As a condition to being provided access to some of NGI's trade secrets, NGI required that those to be provided with that access first agree to maintain and preserve its secrecy through non-disclosure agreements:

    a.    In 2013, Defendant Ziade, in his personal capacity and in his capacity as a principal and representative the Partner-CO Defendants, signed a written agreement with NGI regarding their General Partnership that required maintaining the confidentiality, non-disclosure and restrictions on use of NGI's trade secrets except as authorized by NGI;

    b.    Defendant Hirooka-CO signed the NC-NDA of March 26, 2016 that required maintaining the confidentiality, non-disclosure and restrictions on use of NGI's trade secrets except as authorized by NGI;

    c.    Defendant Yoshihiro signed the NC-NDA of March 26, 2016 that required maintaining the confidentiality, non-disclosure and restrictions on use of NGI's trade secrets except as authorized by NGI;

    d.    In early 2017, Defendant Hirooka-CO and Sansei AimCounsel Inc. agreed to maintain the confidentiality, non-disclosure and restrictions on use of NGI's trade

36

secrets except as authorized by NGI, as a condition of continuing discussions of becoming agents for NGI;

e.  In early 2017, Defendant Hirooka-CO provided another written memorialization of Hirooka-CO's agreement to maintain the confidentiality, non-disclosure and restrictions on use of NGI's trade secrets except as authorized by NGI;

f.  On February 14, 2017, each partner of Defendant Hirooka-CO reconfirmed Defendant Hirooka-CO's prior agreement to maintain the confidentiality, non-disclosure and restrictions on use of NGI's trade secrets except as authorized by NGI;

g.  Defendant Yoshimi signed the NC-NDA of February 17, 2017 that required maintaining the confidentiality, non-disclosure and restrictions on use of NGI's trade secrets except as authorized by NGI;

h.  Sansei AimCounsel Inc., as part of its agreement to become an agent of NGI on March 22, 2017, agreed to maintain the confidentiality, non-disclosure and restrictions on use of NGI's trade secrets except as authorized by NGI.

194.    In reliance on their agreement to maintain and preserve the secrecy of NGI's trade secrets through their non-disclosure agreements, NGI provided the Partner-CO Defendants with access to some of NGI's trade secrets from 2013 until late 2017.

195.    In reliance on their agreement to maintain and preserve the secrecy of NGI's trade secrets through their non-disclosure agreements, NGI provided the Hirooka-CO Defendants with access to some of NGI's trade secrets relating to NGI's projects with the General Partnership in or near the greater Las Vegas, Nevada area beginning in or about April 2016 and continuing through late 2017.  NGI did not provide to the Hirooka-CO Defendants, nor did NGI authorize the Partner-CO Defendants to provide to them, NGI's trade secret information about the service-mix, pricing,

and gross revenues and net profits allocated between NGI and other members of the General Partnership for the projects in or near the greater Las Vegas, Nevada area.

196.    Defendant Ziade (in his personal capacity and in his capacity as a principal and representative of the Partner-CO Defendants), the Partner-CO Defendants, Defendant Hirooka-CO, and Defendants Yoshimi and Yoshihiro (in their personal capacities and in their capacities as partners of Defendant Hirooka-CO), each had a duty to maintain the secrecy of NGI's trade secrets.

197.    On or after May 11, 2016, Defendants misappropriated NGI's trade secrets through improper means including but not limited to theft, the willful breach or willful inducement of a breach of a duty to NGI to maintain the secrecy of those trade secrets, and/or the willful breach or willful inducement of a breach of a duty to NGI imposed by common law, statute, contract, or license.

198.    On May 16, 2017, Partner-CO and its related Defendant companies, through Defendants Vibrant and Nassar, and acting under the direction of Defendant Ziade, willfully and maliciously disclosed to Defendant Hirooka-CO NGI's trade secret information about the service-mix, pricing, and profits allocated between NGI and other members of the General Partnership for the projects in or near the greater Las Vegas, Nevada area, all without NGI's express or implied consent.   At the time of the disclosure, Defendants Ziade, Nassar, Partner-CO and their related Defendant companies including Defendant Vibrant knew that they owed a duty to NGI to maintain the secrecy of the trade secrets or limit the uses of the trade secrets or that it was derived from or through a person who owed a duty to NGI, that they knew or had reason to know that the information they disclosed included NGI's trade secrets, and that those trade secrets were not to be transmitted to anyone outside of the General Partnership.

199.    Upon information and belief, the Hirooka-CO Defendants willfully and maliciously induced the breach of the duty to maintain secrecy of NGI's trade secrets that Defendants Ziade,

Nassar, and the Partner-CO Defendants including Defendant Vibrant owed to NGI. At the time the Hirooka-CO Defendants acquired NGI's trade secret information about the service-mix, pricing, and gross revenues and net profits allocated between NGI and other members of the General Partnership for the projects in or near the greater Las Vegas, Nevada area, they knew or had reason to know that the information they acquired included NGI's trade secrets and that their knowledge of NGI's trade secrets was acquired under circumstances giving rise to a duty to maintain its secrecy or limit is use and/or was derived from or through persons or entities who owed a duty to NGI to maintain the secrecy of or limit the use of the trade secrets.

200.    Defendants' actions in misappropriating NGI's trade secrets were willful and malicious. At the time of their misappropriation, Defendant Ziade, Defendant Nassar, and the other Partner-CO Defendants including Defendants Vibrant knew that the Hirooka-CO Defendants intended to and actually did use NGI's trade secrets to directly compete with NGI. The Hirooka-CO Defendants knew that their misappropriation of NGI's trade secrets breached their contractual duty to NGI not to use those trade secrets or to compete against NGI.

201.    NGI has suffered damages as a result of Defendants' misappropriation of NGI's trade secrets in an amount in excess of $75,000.00.

202.    NGI is entitled to equitable relief because Defendants' misappropriation of NGI's trade secrets is continuing and has caused NGI to suffer irreparable injury for which there is no adequate remedy at law.

203.    Pursuant to N.R.S. §§ 600A.040, 600A.050, and 600A.060, NGI is entitled to remedies for Defendants' misappropriation of its trade secrets, including but not limited to the following:

1415333v.1

a. Injunctive relief to remedy Defendants' misappropriation of NGI's trade secrets on such terms as the Court deems reasonable to eliminate commercial or other advantage that otherwise would be deprived from the misappropriation;

b. An award of damages for NGI's actual loss caused by Defendants' misappropriation of NGI's trade secrets, including but not limited to loss caused by misappropriation and unjust enrichment caused by misappropriation that is not taken into account in computing the loss;

c. Because Defendants' misappropriation or disregard of the rights of NGI as the owner of the trade secrets was willful, wanton or reckless, the Court may award exemplary damages in an amount not exceeding twice the award of damages;

d. Because Defendants' misappropriation was willful and malicious, an award of NGI's reasonable attorneys' fees;

e. NGI's costs; and

f. Such other relief as the Court may determine is appropriate.

### III.

### BREACH OF CONTRACT
### (ALL DEFENDANTS)

204.    Plaintiff NGI restates and realleges each and every allegation contained in Paragraphs 1 through 203 of this First Amended Complaint, and incorporates the same by reference as though fully set forth herein.

205.    Pursuant to N.R.S. § 600A.090(2)(a), NGI alleges its breach of contract claims against the identified Defendants to the extent that those breaches involve the dissemination, disclosure, or use of NGI's confidential and proprietary information, materials, or other property that are not trade secrets, as defined by N.R.S. § 600A.030(5), or involve conduct or are not otherwise

40

encompassed by or subject to the remedies available under Nevada's Uniform Trade Secrets Act. *See generally Frantz v. Johnson*, 116 Nev. 455, 467, 999 P.2d 351, 359 (2000) (observing that not all actions to protect disclosure or use of confidential and proprietary property are preempted by Nevada's UTSA because "not every customer and pricing list will be protected as a trade secret").

206.    The Partner-CO Defendants and Hirooka-CO Defendants each entered into a valid and binding contract with NGI:

a.    In 2013, Defendant Ziade, in his personal capacity and in his capacity as a principal and representative of the Partner-CO Defendants, signed a written agreement with NGI regarding their General Partnership that required maintaining the confidentiality, non-disclosure and restrictions on use of NGI's confidential and  proprietary information, materials, and other property except as authorized by NGI.

b.    Defendant Hirooka-CO signed the written NC-NDA of March 26, 2016 that required maintaining the confidentiality, non-disclosure and restrictions on use of NGI's confidential and  proprietary information, materials, and other property except as authorized by NGI;

c.    Defendant Yoshihiro signed the written NC-NDA of March 26, 2016 that required maintaining the confidentiality, non-disclosure and restrictions on use of NGI's confidential and  proprietary information, materials, and other property except as authorized by NGI;

d.    In early 2017, Defendant Hirooka-CO agreed to maintain the confidentiality, non-disclosure and restrictions on use of NGI's confidential and  proprietary information, materials, and other property except as authorized by NGI, as a condition of continuing discussions of becoming an agent for NGI;

41

1415333v.1

e.  In early 2017, Defendant Hirooka-CO provided another written memorialization of Hirooka-CO's agreement to maintain the confidentiality, non-disclosure and restrictions on use of NGI's confidential and proprietary information, materials, and other property except as authorized by NGI;

f.  On February 14, 2017, each partner of Defendant Hirooka-CO reconfirmed Defendant Hirooka-CO's prior agreement to maintain the confidentiality, non-disclosure and restrictions on use of NGI's confidential and proprietary information, materials, and other property except as authorized by NGI; and

g.  Defendant Yoshimi signed the written NC-NDA of February 17, 2017 that required maintaining the confidentiality, non-disclosure and restrictions on use of NGI's confidential and proprietary information, materials, and other property except as authorized by NGI.

207.   Contrary to the terms of their respective contracts and without NGI's authorization, Defendants breached their contract(s) with NGI by failing to maintain the confidentiality, non-disclosure and restrictions on use of NGI's confidential and proprietary information, materials, and other property.

208.   Defendants used NGI's confidential and proprietary information, materials, and other property to directly compete with NGI.

209.   NGI has suffered damages as a result of the Defendants' breaches of their respective contracts with NGI in an amount in excess of $75,000.00.

210.   NGI has been required to retain the services of the law firm of Wilson, Elser, Moskowitz, Edelman and Dicker, LLP, to prosecute this action, and is, therefore, contractually entitled to recover an award of reasonable attorney's fees and costs of suit incurred herein.

1415333v.1

## IV.

## CONTRACTUAL BREACH OF IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING
## (ALL DEFENDANTS)

211.    Plaintiff NGI restates and realleges each and every allegation contained in Paragraphs 1 through 210 of this First Amended Complaint, and incorporates the same by reference as though fully set forth herein.

212.    Pursuant to N.R.S. § 600A.090(2)(a), NGI alleges its contractual breach of the implied covenant of good faith and fair dealing claims against the identified Defendants to the extent that those breaches involve the dissemination, disclosure, or use of NGI's confidential and proprietary information, materials, or other property that are not trade secrets, as defined by N.R.S. § 600A.030(5), or involve conduct or are not otherwise encompassed by or subject to the remedies available under Nevada's Uniform Trade Secrets Act.  *See generally Frantz v. Johnson*, 116 Nev. 455, 467, 999 P.2d 351, 359 (2000) (observing that not all actions to protect disclosure or use of confidential and proprietary property are preempted by Nevada's UTSA because "not every customer and pricing list will be protected as a trade secret").

213.    Every agreement imposes, as an implied covenant, an obligation of good faith and fair dealing in its performance or enforcement.

214.    Defendants each entered into a valid and binding contract with NGI.

215.    Defendants owe NGI a duty of good faith and fair dealing under their respective agreements.

216.    Defendants breached the implied covenant of good faith and fair dealing by failing to maintain the confidentiality, non-disclosure and restrictions on use of NGI's confidential and proprietary information, materials, and other property and using NGI's confidential and proprietary information, materials, and other property to directly compete with NGI.

43

1415333v.1

217.    As a direct and proximate result of Defendants' breach, NGI has been damaged in an amount in excess of $75,000.00.

218.    NGI has been required to retain the services of the law firm of Wilson, Elser, Moskowitz, Edelman and Dicker, LLP, to prosecute this action, and is, therefore, contractually entitled to recover an award of reasonable attorney's fees and costs of suit incurred herein.

**V.**

**BREACH OF FIDUCIARY DUTY**
**(PARTNER-CO DEFENDANTS)**

219.    Plaintiff NGI restates and realleges each and every allegation contained in Paragraphs 1 through 218 of this First Amended Complaint, and incorporates the same by reference as though fully set forth herein.

220.    Pursuant to N.R.S. § 600A.090(2)(a), NGI alleges its breach of fiduciary duty claim against the identified Defendants to the extent that those breaches involve the dissemination, disclosure, or use of NGI's confidential and proprietary information, materials, or other property that are not trade secrets, as defined by N.R.S. § 600A.030(5), or involve conduct or are not otherwise encompassed by or subject to the remedies available under Nevada's Uniform Trade Secrets Act. *See generally Frantz v. Johnson*, 116 Nev. 455, 467, 999 P.2d 351, 359 (2000) (observing that not all actions to protect disclosure or use of confidential and proprietary property are preempted by Nevada's UTSA because "not every customer and pricing list will be protected as a trade secret").

221.    As partners and/or co joint-venturers in the General Partnership, the Partner-CO Defendants were in a fiduciary relationship with NGI.

222.    As fiduciaries of NGI through the General Partnership, the Partner-CO Defendants owed NGI the duties of loyalty, care, to refrain from self-dealing at the expense of NGI, and to place the General Partnership's best interests over the interests of themselves and others.

44

223.    The Partner-CO Defendants breached their fiduciary duties to NGI by failing to maintain the confidentiality, non-disclosure and restrictions on use of NGI's confidential and proprietary information, materials, and other property and using NGI's confidential and proprietary information, materials, and other property to directly compete with NGI.

224.    The Partner-Co Defendants breached their fiduciary duties to NGI by self-dealing that included but is not limited to the following: interfering with the business relations between NGI and its clients and prospective clients; disparaging NGI; failing to provide a full accounting of all operating expenses, revenues, and profits, and the allocation between the partners including NGI; failing to provide proof of tax payments made to taxing authorities for sums they represented that they had withheld from payments made to NGI and its clients for that purpose; withholding and converting NGI's shares of profits; colluding with the Hirooka-CO Defendants to establish a business that directly competed with NGI; making material misrepresentations of fact to NGI; making material omissions of material fact to NGI; retaining properties for their own tax advantage at the expense of NGI and its investors; directing funds for the construction and management of General Partnership properties to themselves; failing to service properties for which they required monetary payments from NGI and its investors; and directing existing business opportunities that belonged in part to NGI through the General Partnership to the Hirooka-CO Defendants.

225.    As a direct and proximate result of the Partner-CO Defendants' breach, NGI has been damaged in an amount in excess of $75,000.00.

226.    NGI has been required to retain the services of the law firm of Wilson, Elser, Moskowitz, Edelman and Dicker, LLP, to prosecute this action, and is, therefore, contractually entitled to recover an award of reasonable attorney's fees and costs of suit incurred herein.

1415333v.1

**VI.**

**AIDING AND ABETTING PARTNER-CO
DEFENDANTS' BREACH OF FIDUCIARY DUTIES
(HIROOKA-CO DEFENDANTS)**

227.    Plaintiff NGI restates and realleges each and every allegation contained in Paragraphs 1 through 226 of this First Amended Complaint, and incorporates the same by reference as though fully set forth herein.

228.    Pursuant to N.R.S. § 600A.090(2)(a), NGI alleges its aiding and abetting the breach of fiduciary duty claim against the identified Defendants to the extent that those breaches involve the dissemination, disclosure, or use of NGI's confidential and proprietary information, materials, or other property that are not trade secrets, as defined by N.R.S. § 600A.030(5), or involve conduct or are not otherwise encompassed by or subject to the remedies available under Nevada's Uniform Trade Secrets Act.  *See generally Frantz v. Johnson*, 116 Nev. 455, 467, 999 P.2d 351, 359 (2000) (observing that not all actions to protect disclosure or use of confidential and proprietary property are preempted by Nevada's UTSA because "not every customer and pricing list will be protected as a trade secret").

229.    As partners and/or co joint-venturers in the General Partnership, the Partner-CO Defendants were in a fiduciary relationship with NGI.

230.    As fiduciaries of NGI through the General Partnership, the Partner-CO Defendants owed NGI the duties of loyalty, care, to refrain from self-dealing at the expense of NGI, and to place the General Partnership's best interests over the interests of themselves and others.

231.    The Partner-CO Defendants breached their fiduciary duties to NGI by failing to maintain the confidentiality, non-disclosure and restrictions on use of NGI's confidential and proprietary information, materials, and other property and using NGI's confidential and proprietary information, materials, and other property to directly compete with NGI.

46

1415333v.1

232.    The Partner-Co Defendants breached their fiduciary duties to NGI by self-dealing that included interfering with the business relations between NGI and its clients and prospective clients, disparaging NGI, colluding with the Hirooka-CO Defendants to establish a business that directly competed with NGI, making material misrepresentations of fact to NGI, making material omissions of material fact to NGI, retaining properties for their own tax advantage at the expense of NGI and its investors, directing funds for the construction and management of General Partnership properties to themselves, failing to service properties for which they required monetary payments from NGI and its investors, and directing existing business opportunities that belonged in part to NGI through the General Partnership to the Hirooka-CO Defendants.

233.    The Hirooka-CO Defendants knowingly and substantially participated in or encouraged the Partner-CO Defendants' breach of their fiduciary duties to NGI.

234.    As a direct and proximate result of the Hirooka-CO Defendants' actions in aiding and abetting the Partner-CO Defendants' breach of their fiduciary duties to NGI, NGI has been damaged in an amount in excess of $75,000.00.

235.    NGI has been required to retain the services of the law firm of Wilson, Elser, Moskowitz, Edelman and Dicker, LLP, to prosecute this action, and is, therefore, contractually entitled to recover an award of reasonable attorney's fees and costs of suit incurred herein.

## VII.

**TORTIOUS BREACH OF IMPLIED COVENANT
OF GOOD FAITH AND FAIR DEALING
(PARTNER-CO DEFENDANTS)**

236.    Plaintiff NGI restates and realleges each and every allegation contained in Paragraphs 1 through 235 of this First Amended Complaint, and incorporates the same by reference as though fully set forth herein.

1415333v.1

237.    Pursuant to N.R.S. § 600A.090(2)(a), NGI alleges its tortious breach of the implied covenant of good faith and fair dealing claim against the identified Defendants to the extent that those breaches involve the dissemination, disclosure, or use of NGI's confidential and proprietary information, materials, or other property that are not trade secrets, as defined by N.R.S. § 600A.030(5), or involve conduct or are not otherwise encompassed by or subject to the remedies available under Nevada's Uniform Trade Secrets Act. *See generally Frantz v. Johnson*, 116 Nev. 455, 467, 999 P.2d 351, 359 (2000) (observing that not all actions to protect disclosure or use of confidential and proprietary property are preempted by Nevada's UTSA because "not every customer and pricing list will be protected as a trade secret").

238.    Every agreement imposes, as an implied covenant, an obligation of good faith and fair dealing in its performance or enforcement.

239.    The Partner-CO Defendants entered into a valid and binding agreement with NGI.

240.    The Partner-CO Defendants owe NGI a duty of good faith and fair dealing under their agreement.

241.    As partners and/or co joint-venturers in the General Partnership, the Partner-CO Defendants were in a fiduciary relationship with NGI.

242.    As fiduciaries of NGI through the General Partnership, the Partner-CO Defendants owed NGI the duties of loyalty, care, to refrain from self-dealing at the expense of NGI, and to place the General Partnership's best interests over the interests of themselves and others.

243.    The Partner-CO Defendants, through their members and entities, were in a superior or entrusted position to NGI in the General Partnership, including but not limited to: through their position as the local manager and broker for real estate transactions and management of properties in or near Las Vegas, Nevada; their closer proximity to the General Partnership's actual and prospective properties compared to NGI and its clients who mostly reside overseas; their requests

1415333v.1

for, receipt of, retention of and/or disbursement of substantial sums of money on behalf of the General Partnership; and their access to and control over material information relating to the properties in which the General Partnership invested and/or managed.

244.    The Partner-CO Defendants breached their fiduciary duties to NGI and the implied covenant of good faith and fair dealing by failing to maintain the confidentiality, non-disclosure and restrictions on use of NGI's confidential and proprietary information, materials, and other property and using NGI's confidential and proprietary information, materials, and other property to directly compete with NGI.

245.    The Partner-CO Defendants breached their fiduciary duties to NGI and the implied covenant of good faith and fair dealing by self-dealing that included interfering with the business relations between NGI and its clients and prospective clients, disparaging NGI, withholding and converting NGI's shares of profits, colluding with the Hirooka-CO Defendants to establish a business that directly competed with NGI, making material misrepresentations of fact to NGI, making material omissions of material fact to NGI, retaining properties for their own tax advantage at the expense of NGI and its investors, directing funds for the construction and management of General Partnership properties to themselves, failing to service properties for which they required monetary payments from NGI and its investors, and directing existing business opportunities that belonged in part to NGI through the General Partnership to the Hirooka-CO Defendants.

246.    The Partner-CO Defendants' breaches of their fiduciary duties to NGI and the implied covenant of good faith and fair dealing constitute grievous and perfidious conduct.

247.    As a direct and proximate result of Defendants' breach, NGI has been damaged in an amount in excess of $75,000.00.

1415333v.1

248.    NGI has been required to retain the services of the law firm of Wilson, Elser, Moskowitz, Edelman and Dicker, LLP, to prosecute this action, and is, therefore, contractually entitled to recover an award of reasonable attorney's fees and costs of suit incurred herein.

## VIII.

### CIVIL CONSPIRACY UNDER NEVADA LAW
### (ALL DEFENDANTS)

249.    Plaintiff NGI restates and realleges each and every allegation contained in Paragraphs 1 through 248 of this First Amended Complaint, and incorporates the same by reference as though fully set forth herein.

250.    Pursuant to N.R.S. § 600A.090(2)(a), NGI alleges its civil conspiracy claim under Nevada law against the identified Defendants to the extent that the conspiracy involves the dissemination, disclosure, or use of NGI's confidential and proprietary information, materials, or other property that are not trade secrets, as defined by N.R.S. § 600A.030(5), or involves conduct or is not otherwise encompassed by or subject to the remedies available under Nevada's Uniform Trade Secrets Act.  *See generally Frantz v. Johnson*, 116 Nev. 455, 467, 999 P.2d 351, 359 (2000) (observing that not all actions to protect disclosure or use of confidential and proprietary property are preempted by Nevada's UTSA because "not every customer and pricing list will be protected as a trade secret"); *accord Local Ad Link, Inc. v. Aszzoo, LLC*, 2009 WL 10694069 at *9 (D. Nev. Dec. 15, 2009) (holding that civil conspiracy claim could be pled where "not all of the underlying torts pled depend on the misappropriation of trade secrets" and, as a state law claim, did not have to meet the heightened pleading requirement under Fed. R. Civ. P. 9 for a federal civil conspiracy claim).

251.    Defendants, who are two or more persons or entities, combined or colluded with one another through concerted action to accomplish the unlawful objective of undermining NGI's existing business relationships, its prospective economic advantages, and to compete directly with NGI.

252.    Defendants combined or colluded with one another by failing to maintain the confidentiality, non-disclosure and restrictions on use of NGI's confidential and proprietary information, materials, and other property and using NGI's confidential and proprietary information, materials, and other property to directly compete with NGI.

253.    Defendants combined or colluded with one another by self-dealing that included interfering with the business relations between NGI and its clients and prospective clients, disparaging NGI, withholding and converting NGI's shares of profits, colluding with one another to allow the Hirooka-CO Defendants to establish a business that directly competed with NGI, making material misrepresentations of fact to NGI, making material omissions of material fact to NGI, retaining properties for their own tax advantage at the expense of NGI and its investors, directing funds for the construction and management of General Partnership properties to themselves, failing to service properties for which they required monetary payments from NGI and its investors, and directing existing business opportunities that belonged in part to NGI through the General Partnership to the Hirooka-CO Defendants.

254.    Defendants intended to harm NGI through their concerted actions.

255.    As a direct and proximate result of Defendants' breach, NGI has been damaged in an amount in excess of $75,000.00.

256.    NGI has been required to retain the services of the law firm of Wilson, Elser, Moskowitz, Edelman and Dicker, LLP, to prosecute this action, and is, therefore, contractually entitled to recover an award of reasonable attorney's fees and costs of suit incurred herein.

51

1415333v.1

## IX.

## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
## (HIROOKA-CO DEFENDANTS)

257.    Plaintiff NGI restates and realleges each and every allegation contained in Paragraphs 1 through 256 of this First Amended Complaint, and incorporates the same by reference as though fully set forth herein.

258.    Pursuant to N.R.S. § 600A.090(2)(a), NGI alleges its tortious interference claim under Nevada law against the identified Defendants to the extent it involves the dissemination, disclosure, or use of NGI's confidential and proprietary information, materials, or other property that are not trade secrets, as defined by N.R.S. § 600A.030(5), or involves conduct or is not otherwise encompassed by or subject to the remedies available under Nevada's Uniform Trade Secrets Act. *See generally Frantz v. Johnson*, 116 Nev. 455, 467, 999 P.2d 351, 359 (2000) (observing that not all actions to protect disclosure or use of confidential and proprietary property are preempted by Nevada's UTSA because "not every customer and pricing list will be protected as a trade secret").

259.    The Partner-CO Defendants entered into a valid and binding contract with NGI for the mutual purpose of real estate investments in or near the greater Las Vegas, Nevada area, including but not limited to through the General Partnership and specific joint-venture projects.

260.    The Hirooka-CO Defendants knew about the contractual relationship between the Partner-CO Defendants and NGI.

261.    The Hirooka-CO Defendants engaged in intentional acts intended or designed to disrupt the contractual relationship between the Partner-CO Defendants and NGI.

262.    The Hirooka-CO Defendants encouraged and induced the Partner-CO Defendants to breach the confidentiality, non-disclosure and restrictions on use of NGI's confidential and

1415333v.1

proprietary information, materials, and other property and to use NGI's confidential and proprietary information, materials, and other property to directly compete with NGI.

263.    The Hirooka-CO Defendants encouraged and induced the Partner-CO Defendants to violate their duties to NGI for existing joint-venture projects, to disparage NGI, to collude to allow the Hirooka-CO Defendants to establish a business that directly competed with NGI, to make material misrepresentations of fact to NGI, to make material omissions of material fact to NGI, and to direct existing business opportunities that belonged in part to NGI through the General Partnership to the Hirooka-CO Defendants.

264.    The Hirooka-CO Defendants actually disrupted NGI's contractual relations with the Partner-CO Defendants.

265.    As a direct and proximate result of Defendants' breach, NGI has been damaged in an amount in excess of $75,000.00.

266.    NGI has been required to retain the services of the law firm of Wilson, Elser, Moskowitz, Edelman and Dicker, LLP, to prosecute this action, and is, therefore, contractually entitled to recover an award of reasonable attorney's fees and costs of suit incurred herein.

## X.

### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (PARTNER-CO DEFENDANTS)

267.    Plaintiff NGI restates and realleges each and every allegation contained in Paragraphs 1 through 266 of this First Amended Complaint, and incorporates the same by reference as though fully set forth herein.

268.    Pursuant to N.R.S. § 600A.090(2)(a), NGI alleges its tortious interference claim under Nevada law against the identified Defendants to the extent that it involves the dissemination, disclosure, or use of NGI's confidential and proprietary information, materials, or other property that

53

are not trade secrets, as defined by N.R.S. § 600A.030(5), or involves conduct or is not otherwise encompassed by or subject to the remedies available under Nevada's Uniform Trade Secrets Act. *See generally Frantz v. Johnson*, 116 Nev. 455, 467, 999 P.2d 351, 359 (2000) (observing that not all actions to protect disclosure or use of confidential and proprietary property are preempted by Nevada's UTSA because "not every customer and pricing list will be protected as a trade secret").

269.    NGI had prospective contractual relationships with NGI's existing and potential clients, including Defendant Hirooka-CO and Sansei AmiCounsel Inc.

270.    The Partner-CO Defendants had knowledge of NGI's prospective contractual relationships, including that Sansei AmiCounsel Inc. had entered into an agency agreement with NGI.

271.    The Partner-CO Defendants intended to harm NGI by preventing the relationships.

272.    The Partner-CO Defendants intentionally took actions to prevent the relationships by making an unauthorized disclosure to the Hirooka-CO Defendants of NGI's confidential and proprietary information, materials, and other property and by using NGI's confidential and proprietary information, materials, and other property to directly compete with NGI

273.    The Partner-CO Defendants intentionally took actions to prevent the relationships through actions including but not limited to the following: disparaging NGI; withholding financial information about investments that NGI had already made through the General Partnership; withholding and converting NGI's shares of profits; colluding with the Hirooka-CO Defendants to establish a business that directly competed with NGI; making material misrepresentations of fact to NGI; making material omissions of material fact to NGI; and directing the business opportunities that belonged in part to NGI through the General Partnership to themselves and to the Hirooka-CO Defendants, including at least eight projects and many more that followed.

1415333v.1

274.   The Partner-CO Defendants cannot resort to any privilege or jurisdiction for their tortious acts.

275.   The Partner-CO Defendants actually disrupted NGI's existing and prospective economic advantages, and NGI has lost and will continue to lose prospective economic advantages it has through the General Partnership, all causing harm to NGI.

276.   As a direct and proximate result of Defendants' breach, NGI has been damaged in an amount in excess of $75,000.00.

277.   NGI has been required to retain the services of the law firm of Wilson, Elser, Moskowitz, Edelman and Dicker, LLP, to prosecute this action, and is, therefore, contractually entitled to recover an award of reasonable attorney's fees and costs of suit incurred herein.

## XI.

## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (HIROOKA-CO DEFENDANTS)

278.   Plaintiff NGI restates and realleges each and every allegation contained in Paragraphs 1 through 277 of this First Amended Complaint, and incorporates the same by reference as though fully set forth herein.

279.   Pursuant to N.R.S. § 600A.090(2)(a), NGI alleges its tortious interference claim under Nevada law against the identified Defendants to the extent that it involves the dissemination, disclosure, or use of NGI's confidential and proprietary information, materials, or other property that are not trade secrets, as defined by N.R.S. § 600A.030(5), or involves conduct or is not otherwise encompassed by or subject to the remedies available under Nevada's Uniform Trade Secrets Act. *See generally Frantz v. Johnson*, 116 Nev. 455, 467, 999 P.2d 351, 359 (2000) (observing that not all actions to protect disclosure or use of confidential and proprietary property are preempted by Nevada's UTSA because "not every customer and pricing list will be protected as a trade secret").

280.    NGI had prospective contractual relationships with NGI's existing and potential clients and partners, including Defendant Partner-CO and Sansei AmiCounsel Inc.

281.    The Hirooka-CO Defendants had knowledge of NGI's prospective contractual relationships, including that Sansei AmiCounsel Inc. had entered into an agency agreement with NGI.

282.    The Hirooka-CO Defendants intended to harm NGI by preventing the relationships.

283.    The Hirooka-CO Defendants intentionally took actions to prevent the relationships by using NGI's confidential and proprietary information, materials, and other property to directly compete with NGI

284.    The Hirooka-CO Defendants intentionally took actions to prevent the relationships through actions including but not limited to the following:  disparaging NGI; converting NGI's shares of profits; colluding with the Partner-CO Defendants to establish a business that directly competed with NGI; making material misrepresentations of fact to NGI; making material omissions of material fact to NGI; and directing the business opportunities that belonged in part to NGI through the General Partnership to themselves, including at least eight projects and many more that followed.

285.    The Hirooka-CO Defendants cannot resort to any privilege or jurisdiction for their tortious acts.

286.    The Hirooka-CO Defendants actually disrupted NGI's existing and prospective economic advantages, and NGI has lost and will continue to lose prospective economic advantages it has through the General Partnership, all causing harm to NGI.

287.    As a direct and proximate result of Defendants' breach, NGI has been damaged in an amount in excess of $75,000.00.

1415333v.1

288.     NGI has been required to retain the services of the law firm of Wilson, Elser, Moskowitz, Edelman and Dicker, LLP, to prosecute this action, and is, therefore, contractually entitled to recover an award of reasonable attorney's fees and costs of suit incurred herein.

## XII.

### DEFAMATION/BUSINESS DISPARAGEMENT
### (HIROOKA-CO DEFENDANTS)

289.     Plaintiff NGI restates and realleges each and every allegation contained in Paragraphs 1 through 288 of this First Amended Complaint, and incorporates the same by reference as though fully set forth herein.

290.     Upon information and belief, the Hirooka-CO Defendants, acting through Defendants Yoshihiro and Yoshimi, made false and defamatory statements of fact about NGI, including but not limited to the following:  that NGI lied about its exclusive relationship with the Partner-CO Defendants through the General Partnership; that NGI stole or tried to steal the Hirooka-CO Defendants' clients and money; that NGI could not fulfill NGI's duties to its clients; that NGI intentionally performed its services in an "unprofessional business manner"; that current and past clients of NGI (and current and prospective joint-venture partners of the General Partnership) were actually clients "and guests" of Hirooka-CO; that NGI's agent through Sansei AimConsul Inc., Mr. TF, was a client of Hirooka-CO even though Hirooka-CO was not part of the General Partnership or NGI; and that the Partner-CO Defendants dissolved the relationship with NGI because it was involved in too many lawsuits, even though there were no lawsuits involving NGI on or before the date of that statement.

291.     Upon information and belief, the Hirooka-CO Defendants, acting through Defendants Yoshihiro and Yoshimi, published their false and defamatory statements about NGI on dates and through means of communication including but not limited to the following: on or about July 17-18,

2017, through written communications; on or about August 11-12, 2017 through statements made to Ms. AS and Mr. TF of Sansei AimConsul Inc.; on or about November 28, 2017 through statements made during meetings with third parties in Japan; on or about the beginning of 2018 through communications with third parties; and on or about March 10, 2018 through statements made during a presentation to third parties in Japan.

292.    The Hirooka-CO Defendants, acting through Defendants Yoshihiro and Yoshimi, published the false and defamatory statements through unprivileged communications to other persons for the malicious purpose of harming NGI.

293.    The Hirooka-CO Defendants, acting through Defendants Yoshihiro and Yoshimi, were at least negligently at fault in publishing their false and defamatory communications.

294.    Because one or more of the defamatory communications imputed NGI and its principals lack of fitness for the services it provides or tended to injure NGI in its business, those communications are deemed defamation *per se* and damages are presumed.

295.    As a direct and proximate result of the Hirooka-CO Defendants' defamatory communications, NGI has been damaged in an amount in excess of $75,000.00.

296.    NGI has been required to retain the services of the law firm of Wilson, Elser, Moskowitz, Edelman and Dicker, LLP, to prosecute this action, and is, therefore, contractually entitled to recover an award of reasonable attorney's fees and costs of suit incurred herein.

## XIII.

### DEFAMATION/BUSINESS DISPARAGEMENT
### (PARTNER-CO DEFENDANTS)

297.    Plaintiff NGI restates and realleges each and every allegation contained in Paragraphs 1 through 296 of this First Amended Complaint, and incorporates the same by reference as though fully set forth herein.

58

298.    Upon information and belief, the Partner-CO Defendants, acting through Defendant Ziade, made false and defamatory statements of fact about NGI, including but not limited to the following: that NGI lied about its exclusive relationship with the Partner-CO Defendants through the General Partnership; that NGI could not fulfill NGI's duties to its clients; and that Partner-CO Defendants dissolved the relationship with NGI because it was involved in too many lawsuits, even though there were no lawsuits involving NGI on or before the date of that statement.

299.    Upon information and belief, the Partner-CO Defendants, acting through Defendant Ziade, published their false and defamatory statements about NGI on dates and through means of communication including but not limited to the following: to the Hirooka-CO Defendants, acting through Defendants Yoshihiro and Yoshimi, during in-person meetings on or about April 1, 2016, in January 2017, on March 24-26, 2017, on August 11-12, 2017, on November 28, 2017, and on December 1, 2017 and through other oral and written communications between those dates; on or about August 11-12, 2017 through statements made to Ms. AS and Mr. TF of Sansei AimConsul Inc.; and on or about November 28, 2017 through statements made during meetings with third parties in Japan.

300.    Upon information and belief, Defendant Ziade was present when the Hirooka-CO Defendants, acting through Defendants Yoshihiro and Yoshimi, published some of their false and defamatory statements, which included false and defamatory statements about NGI's business practices in the General Partnership and with its clients described in paragraph 290-291.  Upon information and Defendant Ziade was present for or learned of those false and defamatory statements about NGI, and did not correct them, and thereby adopted those false and defamatory statements as his own, on his own behalf and on behalf of the Partner-CO Defendants.

59

301.    The Partner-CO Defendants, acting through Defendant Ziade, published their actual and/or adopted false and defamatory statements through unprivileged communications to other persons for the malicious purpose of harming NGI.

302.    The Partner-CO Defendants, acting through Defendant Ziade, were at least negligently at fault in publishing their actual and/or adopted false and defamatory communications.

303.    Because one or more of the defamatory communications imputed NGI and its principals lack of fitness for the services it provides or tended to injure NGI in its business, those communications are deemed defamation *per se* and damages are presumed.

304.    As a direct and proximate result of the Partner-CO Defendants' defamatory communications, NGI has been damaged in an amount in excess of $75,000.00.

305.    NGI has been required to retain the services of the law firm of Wilson, Elser, Moskowitz, Edelman and Dicker, LLP, to prosecute this action, and is, therefore, contractually entitled to recover an award of reasonable attorney's fees and costs of suit incurred herein.

## XIV.

### UNJUST ENRICHMENT
### (PARTNER-CO DEFENDANTS)

306.    Plaintiff NGI restates and realleges each and every allegation contained in Paragraphs 1 through 305 of this First Amended Complaint, and incorporates the same by reference as though fully set forth herein.

307.    In furtherance of their partnership with the Partner-CO Defendants through the General Partnership, NGI conferred on the Partner-CO Defendants benefits, including but not limited to the following: access to NGI's trade secrets and confidential and proprietary information and materials, as described in paragraphs 166-167 and 187-188; NGI's investment of its time, money, and expertise to develop brands and trademarks used by the General Partnership for its

common purposes; and NGI's shares of the profits of the General Partnership, for which the Partner-CO Defendants were responsible for making distributions and accounting for how those distributions were calculated.

308.    The Partner-CO Defendants accepted and retained those benefits, and have used them through self-dealing for joint ventures and investment projects that they have wrongfully converted at the expense of their General Partnership with NGI.

309.    The Partner-CO Defendants in fact appreciated those benefits, which have substantial commercial and economic value.

310.    It would be unjust for the Partner-CO Defendants to retain the benefits conferred by NGI.

311.    As a direct and proximate result of the Partner-CO Defendants' wrongful retention of those benefits, NGI has been damaged in an amount in excess of $75,000.00.

312.    NGI has been required to retain the services of the law firm of Wilson, Elser, Moskowitz, Edelman and Dicker, LLP, to prosecute this action, and is, therefore, contractually entitled to recover an award of reasonable attorney's fees and costs of suit incurred herein.

**XV.**

**UNJUST ENRICHMENT**
**(HIROOKA-CO DEFENDANTS)**

313.    Plaintiff NGI restates and realleges each and every allegation contained in Paragraphs 1 through 312 of this First Amended Complaint, and incorporates the same by reference as though fully set forth herein.

314.    In furtherance of a business relationship as a client or agent of NGI, NGI conferred on the Hirooka-CO Defendants benefits, including but not limited to the following: access to NGI's trade secrets and confidential and proprietary information and materials, as described in paragraphs

61

166-167 and 187-188; NGI's investment of its time, money, and expertise to develop brands and trademarks used by the General Partnership for its common purposes; and an introduction to NGI's partners in the General Partnership.

315.    The Hirooka-CO Defendants colluded with the Partner-CO Defendants to convert NGI's shares of the profits of the General Partnership, wrongfully retaining those shares for themselves.

316.    The Hirooka-CO Defendants accepted and retained those benefits, and have used them through self-dealing for joint ventures and investment projects that they have wrongfully converted at the expense of NGI through its General Partnership with the Partner-CO Defendants.

317.    The Hirooka-CO Defendants in fact appreciated those benefits, which have substantial commercial and economic value.

318.    It would be unjust for the Hirooka-CO Defendants to retain the benefits conferred by NGI.

319.    As a direct and proximate result of the Hirooka-CO Defendants' wrongful retention of those benefits, NGI has been damaged in an amount in excess of $75,000.00.

320.    NGI has been required to retain the services of the law firm of Wilson, Elser, Moskowitz, Edelman and Dicker, LLP, to prosecute this action, and is, therefore, contractually entitled to recover an award of reasonable attorney's fees and costs of suit incurred herein.

## XVI.

### PROMISSORY ESTOPPEL
### (PARTNER-CO DEFENDANTS)

321.    Plaintiff NGI restates and realleges each and every allegation contained in Paragraphs 1 through 320 of this First Amended Complaint, and incorporates the same by reference as though fully set forth herein.

62

1415333v.1

322.    The Partner-CO Defendants made material representations to NGI, including but not limited to the following:  that they would act in good faith and as fiduciaries in the General Partnership; that they would safeguard NGI's trade secrets and confidential and proprietary information and materials from dissemination or use that was not authorized by NGI; that they would act as fiduciaries in protecting NGI's investments in joint-ventures pursued by the General Partnership; that they would not engage in self-dealing; that they would provide timely and accurate accountings for all of NGI's investments with the General Partnership including operating expenses and profits; and that they would timely distribute NGI's share of profits according to their agreement with NGI.

323.    The Partner-CO Defendants intended that NGI would act on their material representations, to induce NGI into entering into the General Partnership, to provide the Partner-CO Defendants with access to NGI's trade secrets and confidential and proprietary information and materials, and to provide access to NGI's clients and prospective clients.

324.    Based upon the Partner-CO Defendants' material representations and conduct, NGI had the right to believe that the Partner-CO Defendants intended to honor their representations.

325.    NGI was ignorant of the true state of facts regarding Partner-CO's wrongful actions, as alleged herein, including but not limited to the following: their misappropriation of NGI's trade secrets and confidential and proprietary information and materials; their conversion of NGI's shares of investments and common assets of the General Partnership; their interference with NGI's business relationships with its clients and prospective clients; and their collusion with the Hirooka-CO Defendants to directly compete with NGI.

326.    NGI detrimentally relief upon the Partner-CO Defendants' material representations by conveying substantial valuable consideration to the Partner-CO Defendants through the General Partnership.

1415333v.1

327.    As a direct and proximate result of the Partner-CO Defendants' misrepresentations and misconduct, NGI has been damaged in an amount in excess of $75,000.00.

328.    NGI has been required to retain the services of the law firm of Wilson, Elser, Moskowitz, Edelman and Dicker, LLP, to prosecute this action, and is, therefore, contractually entitled to recover an award of reasonable attorney's fees and costs of suit incurred herein.

## XVII.

### PROMISSORY ESTOPPEL
### (HIROOKA-CO DEFENDANTS)

329.    Plaintiff NGI restates and realleges each and every allegation contained in Paragraphs 1 through 328 of this First Amended Complaint, and incorporates the same by reference as though fully set forth herein.

330.    The Hirooka-CO Defendants made material representations to NGI, including but not limited to the following:  that they would act in good faith in pursuing investment opportunities with NGI; that they would safeguard NGI's trade secrets and confidential and proprietary information and materials from dissemination or use that was not authorized by NGI; and that they would not interfere with NGI's existing business relationships, including with the Partner-CO Defendants through the General Partnership and NGI's clients and prospective clients.

331.    The Hirooka-CO Defendants intended that NGI would act on their material representations, to induce NGI into providing the Hirooka-CO Defendants with access to NGI's trade secrets and confidential and proprietary information and materials, to provide an introduction and access to NGI's partners through the General Partnership including the Partner-CO Defendants, and to provide access to NGI's clients and prospective clients.

332.    Based upon the Hirooka-CO Defendants' material representations and conduct, NGI had the right to believe that the Hirooka-CO Defendants intended to honor their representations.

1415333v.1

333.    NGI was ignorant of the true state of facts regarding Hirooka-CO's wrongful actions, as alleged herein, including but not limited to the following: their misappropriation of NGI's trade secrets and confidential and proprietary information and materials; their conversion of NGI's shares of investments and common assets of the General Partnership; their interference with NGI's business relationships with its clients and prospective clients; and their collusion with the Partner-CO Defendants to directly compete with NGI.

334.    NGI detrimentally relief upon the Hirooka-CO Defendants' material representations by conveying substantial valuable consideration to the Hirooka-CO Defendants.

335.    As a direct and proximate result of the Hirooka-CO Defendants' misrepresentations and misconduct, NGI has been damaged in an amount in excess of $75,000.00.

336.    NGI has been required to retain the services of the law firm of Wilson, Elser, Moskowitz, Edelman and Dicker, LLP, to prosecute this action, and is, therefore, contractually entitled to recover an award of reasonable attorney's fees and costs of suit incurred herein.

**XVIII.**

**RELIEF UNDER THE DECLARATORY JUDGMENTS ACT (28 U.S.C. § 2201)**
**(ALL DEFENDANTS)**

337.    Plaintiff NGI restates and realleges each and every allegation contained in Paragraphs 1 through 336 of this First Amended Complaint, and incorporates the same by reference as though fully set forth herein.

338.    NGI brings this claim for a declaratory judgment pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201.

339.    An actual case or controversy of a justiciable nature exists between the parties which presents an actual, present need for declaration.  There is an assertion of rights by NGI in which it has a definite interest and which will be denied by Defendants.

65

340.    NGI is entitled to a judgment and declaration that the Defendants have misappropriated NGI's trade secrets.

341.    NGI is entitled to a judgment and declaration that the Defendants have misappropriated NGI's confidential and proprietary information and materials.

342.    NGI is entitled to a judgment and declaration that NGI is awarded legal and equitable title in the Partner-CO brands/trademarks used in the General Partnership, including but not limited to "Growth Holding," "Vibrant," "Growth Construction," "Growth Luxury Realty," "Growth Luxury Homes," "GLH," and precluding Defendants from using or benefitting from those brands.

343.    NGI is entitled to a judgment and declaration that the forum selection clause in the agreements with one or more of the Defendants be reformed to include Las Vegas, Nevada because all of the money for each project was spent and earned in Las Vegas, Nevada, on projects existing only in Las Vegas or nearby and most of the Defendants reside in Las Vegas, Nevada.

344.    NGI is entitled to a judgment and declaration that any alleged or actual mandatory-arbitration-clauses are instead permissive-arbitration-clauses because the mandatory-arbitration-clauses are unconscionable and otherwise improper.  Alternatively, NGI may seek to dismiss those few members of the common enterprise that may be entitled to arbitration.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1415333v.1

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff demands judgment against the Defendants as follows:

A.    For a judgment against Defendants in an amount to be determined at trial for misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836(c) and the Nevada Uniform Trade Secrets Act, N.R.S. Chapter 600A., and exemplary damages;

B.    For a judgment against Defendants in an amount to be determined at trial for breach of contract;

C.    For a judgment against Defendants in an amount to be determined at trial for breach of the implied covenant of good faith and fair dealing;

D.    For a judgment against the Partner-CO Defendants in an amount to be determined at trial for breach of fiduciary duty;

E.    For a judgment against the Hirooka-CO Defendants in an amount to be determined at trial for aiding and abetting the Partner-CO Defendants' breach of fiduciary duty;

F.    For a judgment against the Partner-CO Defendants in an amount to be determined at trial for tortious breach of the implied covenant of good faith and fair dealing;

G.    For a judgment against Defendants in an amount to be determined at trial for civil conspiracy;

H.    For a judgment against the Hirooka-CO Defendants in an amount to be determined at trial for tortious interference with contractual relations;

I.    For a judgment against Defendants in an amount to be determined at trial for tortious interference with prospective economic advantage;

J.    For a judgment against Defendants in an amount to be determined at trial for defamation and/or business disparagement;

1415333v.1

K.      For a judgment against Defendants in an amount to be determined at trial for unjust enrichment;

L.      For a judgment against Defendants in an amount to be determined at trial for promissory estoppel;

M.      For a judgment and declaration against Defendants under the Declaratory Judgments Act, as specified in Count XVIII;

N.      For an award of exemplary and/or punitive damages, as warranted, in an amount to be determined at trial;

O.      For injunctive relief, preliminarily and permanently enjoining and restraining Defendants, their agents, servants, employees, representatives, and all persons acting in concern or participating with Defendants or any one of them, from using or disclosing Plaintiff's confidential and proprietary information and materials, trade secrets, and assets and from violating their legal and contractual duties to Plaintiff;

P.      For injunctive relief preliminarily enjoining the conveyance, transfer or sale of assets and information of the General Partnership until a complete accounting is made to Plaintiff;

Q.      For an accounting of all monies transmitted to or through the Partner-CO Defendants relating to the General Partnership, to all investments, projects, and/or joint ventures with NGI and/or the Hirooka-CO Defendants, and all investments and projects the Partner-CO Defendants have undertaken on or after May 16, 2017;

R.      For the imposition of a constructive trust in regards to all profits obtained by the Defendants through their use of Plaintiff's assets, investments, trade secrets, confidential and proprietary information, and all transactions arising from breaches of duties owed to Plaintiff.

S.      For an award of Plaintiff's pre-judgment and post-judgement interest and its attorneys' fees, costs, and other expenses incurred in this action; and

1415333v.1

T.    For such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury for all issues so triable.

DATED this 25th day of January, 2019.

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP


BY:  : */s/ Richard I. Dreitzer*
        RICHARD I. DREITZER
        Nevada Bar No. 6626
        JAMES T. TUCKER
        Nevada Bar No. 12507
        300 South 4th Street, 11th Floor
        Las Vegas, NV  89101
        Attorneys for Plaintiff Nikkei Global Inc.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

69

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that I am an employee of Wilson, Elser, Moskowitz, Edelman & Dicker LLP and that on January 25, 2019, I served the foregoing **FIRST AMENDED COMPLAINT** as follows:

☒    via electronic means by operation of the Court's electronic filing system, upon each party in this case who is registered as an electronic case filing user with the Clerk; and/or

| | |
|---|---|
| Joseph A. Liebman, Esq. | Michael M. Later, Esq. |
| **BAILEY KENNEDY** | **THE LAW OFFICE OF MICHAEL M. LATER** |
| 8984 Spanish Ridge Avenue | 8890 Spanish Ridge Avenue |
| Las Vegas, Nevada 89148-1302 | Las Vegas, Nevada 89148-1302 |
| Tel: 702.562.8820/Fax: 702.562.8821 | Tel: 702.685.4400/Fax: 702.629.7783 |
| jliebman@baileykennedy.com | michael@mlaterlaw.com |
| *Attorneys for Defendants Philippe Ziade, Jude Nassar, Appleton Properties, LLC, Z Leb Group, LLC, Progressive Construction, Inc., Growth Development, LLC, Vibrant Realty, LLC, AJ Properties International, LLC, AJ Properties International Series 2, LLC, Growth Holdings, LLC, Growth Luxury Homes, LLC, and Growth Luxury Realty, LLC* | *Attorneys for Defendants Philippe Ziade, Jude Nassar, Appleton Properties, LLC, Z Leb Group, LLC, Progressive Construction, Inc., Growth Development, LLC, Vibrant Realty, LLC, AJ Properties International, LLC, AJ Properties International Series 2, LLC, Growth Holdings, LLC, Growth Luxury Homes, LLC, and Growth Luxury Realty, LLC* |

☒    by transmitting via email the document listed above to the email address set forth below on this date.

*Courtesy Copy:*
R. Scott Rasmussen, Esq.
Cooper Levenson, P.A.
1835 Village Center Circle
Las Vegas, Nevada 89134
T: (702) 366-1125
F: (702) 366-1857
srasmussen@cooperlevenson.com

By: */s/ Agnes R. Wong*
An Employee of
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

70

1415333v.1